IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BORCHARDT RIFLE CORP.,

        Plaintiff,

vs.                                         No. CIV 08-1188 JB/WDS

NANCY F. COOK, Director of Industry
Operations, Bureau of Alcohol, Tobacco,
Firearms and Explosives,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, filed October 27, 2009 (Doc. 13). The Court held a hearing on February 5, 2010. The primary issues are: (i) whether the Court has sufficient evidence to conduct a de novo review of Defendant Nancy Cook's revocation of Plaintiff Borchardt Rifle Corp.'s federal firearms license; and (ii) whether Plaintiff Borchardt Rifle Corp. willfully violated 18 U.S.C. § 923(g) of the Gun Control Act of 1968, 18 U.S.C. §§ 921 to 931, which gave rise to grounds for Cook's revocation. Because the Court finds that the Administrative Record and the transcript of the Administrative Hearing provide it with sufficient evidence to make a determination as a matter of law, and because the Court finds that the evidence demonstrates that, with respect to at least one Count in the Petition for Judicial Review, filed December 23, 2009 (Doc. 1), Borchardt Rifle willfully violated 18 U.S.C. § 923, the Court will grant Cook's motion for summary judgment and affirm the revocation.

## FACTUAL BACKGROUND

On October 2, 2009, Cook, in her capacity as the Director of Industry Operations for the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Phoenix Field Division, filed a certified copy of the Administrative Record with the Court. See Notice of Lodging of Administrative Record, filed October 2, 2009 (Doc. 12). The Administrative Record contains Exhibits, designated by GX and specific page numbers, and the transcript of the Administrative Hearing. In her motion for summary judgment, Cook submitted a statement of undisputed material facts, based upon the Administrative Record and the Administrative Hearing. Borchardt Rifle's response did not include a statement of disputed facts. In its Petition for Judicial Review, filed December 23, 2008 (Doc. 1), Borchardt Rifle did not challenge Cook's factual findings relating to Count I , Count IV, Count V, Counts VI-X, and Count XII. Borchardt Rifle challenged the factual findings as to Count II,  Count III, and Count XI. To the extent that Borchardt Rifle disputes the facts as to those Counts, the Court will address the dispute. Otherwise, the Court adopts the facts as Cook has stated them, and as supported by the Administrative Record.

### 1. **Background Information.**

At the time of the violations that form the basis for this license revocation, Albert Story, acting individually or as a corporate officer, had been continuously licensed by the ATF as a dealer and/or manufacturer of firearms other than destructive devices for approximately fifteen years. See Administration Record GX-6 at 17, GX-7 at 20, GX-8 at 23-24, GX-10 at 29, GX-13 at 38-50. In 1992, Story, doing business as Story's Guns and Machine, obtained a license, identified by License Number 5-85-017-07-4L-00203, from the ATF as a dealer in firearms other than destructive devices at the premises of 9732 Highway 180 West, Silver City, New Mexico. That license expired

in 2005.  See License Revocation Hearing, In the Matter of Borchardt Rifle Corporation at 14:5-8

(taken September 16, 2008)("Admin. Hearing Tr.")(DeLuna); Administrative Record GX-6 at 17.

In 2001, Story applied for a new license as a manufacturer.  See Admin. Hearing Tr. at 14:9-10

(DeLuna).  That license expired in 2004.  See GX-7 at 20.  In 2002, Borchardt Rifle, a New Mexico

corporation, filed an application with ATF for a license as a manufacturer of firearms other than

destructive devices at the premises of 9732 Highway 180 West, Silver City, New Mexico.

See Admin. Hearing Tr. at 14:13-19 (DeLuna); Administrative Record GX-8, at 23, GX-9 at 26,

GX-13 at 36.  Story is the president and sole operator of Borchardt Rifle.  See Admin. Hearing Tr.

at 8:3-23 (DeLuna, Karmgard); Administrative Record GX-8 at 24, GX-10 at 29, GX-13 at 36.

    2.    **June 2002 Application and Compliance Inspection.**

On June 26, 2002, ATF Industry Operations Investigator Arturo Chapa conducted a

compliance inspection of the business premises and records relating to the existing license in Story's

name, along with an application inspection relating to the Borchardt Rifle application.  See Admin.

Hearing Tr. at 15:9-21 (DeLuna); Administrative Record GX-10 at 29-30.  On that same date, Story

signed an Acknowledgment of ATF Rules and Procedures, acknowledging that an ATF inspector

explained to Story the regulatory requirements relating to federal firearms licensees, including the

requirements relating to Forms 4473[1] and acquisition and disposition books[2], and that the ATF

---

[1] An ATF Form 4473 is a firearms transaction record which must be completed for all sales of a firearm by a federal-firearms-licensee to a non-licensee, except in certain limited circumstances. The purpose of the Form 4473 is "to record identifying information about gun purchasers and the firearms they purchase, which allows firearms to be traced and prevents transfer to persons prohibited from possessing firearms."  Article II Gun Shop v. Gonzales, 441 F.3d 492, 494 (7th Cir. 2006), cert. denied, 549 U.S. 995 (2006).  The Form 4473 must include certain specified information concerning: (i) the transferee; (ii) the type of identification provided by the transferee; (iii) the National Instant Criminal Background Check System ("NICS") background check; (iv) the firearm transferred; and (v) the transferor.  27 C.F.R. § 478.124.  It must also contain the certification signature of the transferee and the date of certification, the re-certification signature of

Inspector answered any questions he had.  See Administrative Record GX-11 at 31.  Following the

June 2002 compliance inspection, Chapa cited Story for errors in five of the fifteen Forms 4473

Story had on file.  The errors included: (i) two of the Forms 4473 contained incorrect or duplicate

transaction serial numbers[3]; (ii) two Forms 4473 were missing Story's signature and dates; (iii) one

Form 4473 lacked the firearm description information; and (iv) one Form 4473 was missing a

customer's signature.  See Administrative Record GX-10, ¶¶ 8, 10 at 30.  Chapa informed Story that

five forms with errors out of fifteen forms was a high rate of error.  See Administrative Record

GX-10, ¶ 8 at 30.  Chapa noted in his inspection report that "Mr. Story appeared to want to do things

right and was willing to correct his errors and welcomed the inspector to return for a follow-up

inspection."  Administrative Record GX-10, ¶ 12 at 30.  A written Report of Violations listed the

violations and necessary corrective actions.  See Administrative Record GX-12 at 32.  On

July 24, 2002, ATF issued License Number 5-85-017-07-8H-00280 to Borchardt Rifle as a

manufacturer of firearms other than destructive devices.  See Administrative Record GX-8 at 23.

> **3.**   **August 2007 Compliance Inspection.**

On August 27, 2007, ATF Industry Operations Investigator Norma DeLuna conducted a

second compliance inspection of Borchardt Rifle's premises.  See Admin. Hearing Tr. at

---

transferee and date of re-certification, when appropriate, the signature of the transferor, and the date
that the transfer was completed.  See 27 C.F.R. § 478.124.

[2] A federally licensed manufacturer of firearms must retain one or more acquisition and
disposition books, also known as bound books or A&D books, in which the licensee must record
certain specified information concerning the manufacture or other acquisition of a firearm, and
certain specified information concerning the sale or other disposition of a firearm.
See 27 C.F.R. § 478.123.

[3]The transaction serial number is the licensee's internal number used to maintain the Forms
4473 in numerical order.  See 27 C.F.R. § 478.124(b).  The number is located in the upper
right-hand corner of each Form 4473.

9:17-18 (DeLuna); Administrative Record GX-13 at 36-50. DeLuna gave no advance notification of the inspection. See Administrative Record GX-13 at 36. The building premises for Borchardt Rifle is a detached machine shop located next to Story's home residence, located approximately fifteen miles from Silver City, New Mexico. See Admin. Hearing Tr. at 7:21-25 (DeLuna); Administrative Record GX-13 at 36. As a licensed manufacturer of firearms other than destructive devices, Borchardt Rifle may manufacture firearms, sell firearms, and engage in gunsmithing. See Admin. Hearing Tr. at 9:3-6 (DeLuna).

At the time of the inspection, the acquisition and disposition book listed five firearms. See Administrative Record GX-13 at 39. DeLuna physically counted three firearms in the inventory and recognized a discrepancy of two firearms. See Administrative Record GX-13 at 39; Admin. Hearing Tr. at 9:25-10:4 (Karmgard, DeLuna). Story's acquisition and disposition book noted that one of the firearms had been missing for about two months, and that he was still searching for it. Story stated to DeLuna that the other firearm was transferred to a customer named Wayne Billings, and that he forgot to have Billings fill out a Form 4473, and that he is waiting for the customer to return to fill out the form. See Administrative Record GX-13 at 39.

For the inspection period of January 2004 to August 2007, DeLuna's compliance inspection revealed the following: (i) Borchardt Rifle manufactured twenty firearms -- three in 2004, nine in 2005, five in 2006, and four in 2007; (ii) Borchardt Rifle sold or otherwise disposed of a total of fifty-nine firearms; and (iii) Borchardt Rifle had a total of twenty-two firearms in inventory for repairs. See Administrative Record GX-13 at 36. Borchardt Rifle maintained separate bound books for manufacturing, dealing, and gunsmithing. See Admin. Hearing at 9:7-8 (DeLuna).

During the inspection, DeLuna found fifty-two Forms 4473 on file on Borchardt Rifle's premises for the period of January 2004 to August 2007. See Admin. Hearing Tr. at 43:7-12

(DeLuna).  For 2004, Borchardt Rifle had thirteen Forms 4473 on file and all thirteen had errors.

For 2005, there were seven Forms 4473 and all seven had errors.  For 2006, DeLuna reviewed

twenty Forms 4473 and fourteen had errors.  For 2007, Borchardt Rifle had twelve Forms 4473 on

file and nine of them contained errors.  See Admin. Hearing at 43:7-12 (DeLuna).  In total,

forty-three of the fifty-two Borchardt Rifle Forms 4473 on file for the period of January 2004 to

August 2007 contained errors and/or omissions.

Borchardt Rifle maintained its Forms 4473 by transaction serial number, but DeLuna found

that the Forms 4473 were not properly maintained because they had the following errors:

(i) Borchardt Rifle assigned duplicate transaction serial numbers on the Forms 4473 in six instances,

see Admin. Hearing Tr. at 35:23-39:25 (DeLuna, Karmgard); Administrative Record GX-17 at 60;

GX-17A at 72; GX-26 at 100 and GX-27 at 103; GX-40 at 153 and GX-41 at 133; GX-49 at 157 and

GX-50 at 161; GX-58 at 187 and GX-59 at 190; (ii) Borchardt Rifle assigned triplicate transaction

serial numbers on Forms 4473 in two instances, see Admin. Hearing Tr. at 40:5-41:6;

Administrative Record GX-17 at 60; GX-17A at 72; GX-38 at 126, GX-39 at 128, GX-41 at 133;

GX-42 at 137, GX-43 at 139 and GX-44 at 142; and (iii) Borchardt Rifle assigned transaction serial

numbers on Forms 4473 that did not fall within the serial number sequence in four instances,

see GX-17 at 60; GX-17A at 72; GX-23 at 92; GX-24 at 94; GX-64 at 210; and GX-65 at 213.[4]

These sequencing errors were repeat violations from Story's 2002 compliance inspection.

_____

[4] In its opposition brief, Borchardt Rifle argues that there can be no issue before the Court concerning the allegation that transaction serial numbers of Forms 4473 did not fall within the serial number sequence in four instances because there was no such finding in the Final Notice.  The Court reviewed the Final Notice and finds that ¶ 6(f), which states "Failure to file ATF Forms 4473 in numerical sequence in twelve instances in violation of 27 C.F.R. § 478.124(b)" includes the six duplicate serial numbers, the two triplicate serial numbers, and the four out-of-sequence Forms 4473.  See Administrative Record GX-86 at 4.  The Court will, therefore, review this allegation.

See Admin. Hearing Tr. at 35:20-22 (Karmgard, DeLuna); id. at 41:7-9 (Karmgard, DeLuna).

Other errors and/or omissions on the Forms 4473 included: (i) two Forms 4473 contained post office boxes instead of a residence address, see Admin. Hearing Tr. at 43:16-44-17 (Karmgard, DeLuna); Administrative Record GX-13 at 40; GX-15 at 52-53; (ii) five Forms 4473 did not contain complete city and state of birth, see Admin. Hearing Tr. at 44:18-45:18 (Karmgard, DeLuna); Administrative Record GX-24 at 95; GX-26 at 100; GX-30 at 108; GX-50 at 161; and GX-59 at 190; (iii) six Forms 4473 did not contain the transferee's signature and/or certification date, see Admin. Hearing Tr. at 45:19-47:12 (Karmgard, DeLuna); Administrative Record GX-38 at 126; GX-41 at 134; GX-43 at 140; GX-49 at 158; GX-55 at 177; GX-65 at 214; (iv) six Forms 4473 did not contain complete and correct transferee identification information, see Admin. Hearing Tr. at 47:13-49:11 (Karmgard, DeLuna); Administrative Record GX-44 at 143; GX-56 at 181; GX-58 at 188; GX-60 at 195; GX-61 at 199; GX-62 at 205; (v) seventeen Forms 4473 did not contain NICS contact dates, see Admin. Hearing Tr. at 50:2-52:24 (Karmgard, DeLuna); Administrative Record GX-25 at 99; GX-26 at 101; GX-27 at 103; GX-28 at 105; GX-29 at 107; GX-30 at 109; GX-32 at 113; GX-34 at 117; GX-35 at 119; GX-36 at 121; GX-38 at 127; GX-39 at 129; GX-40 at 131; GX-42 at 138; GX-44 at 143; GX-47 at 152; GX-48 at 154; (vi) three Forms 4473 did not contain NICS response information, see Admin. Hearing Tr. at 52:14-53:10 (Karmgard, DeLuna); (vii) one Form 4473 did not contain the "delayed" NICS response, see Admin. Hearing Tr. at 52:7-9 (Karmgard, DeLuna); Administrative Record GX-35 at 119; (viii) five Forms 4473 did not contain complete and correct firearm identification information, see Admin. Hearing Tr. at 53:19-54:20 (Karmgard, DeLuna); Administrative Record GX-25 at 99; GX-37 at 123; GX-47 at 152; GX-51 at 165; (ix) twelve Forms 4473 did not contain complete and/or correct transferor information and transfer date, see Admin. Hearing Tr. at 55:3-57:10

-7-

(Karmgard, DeLuna); Administrative Record GX-30 at 109; GX-37 at 124; GX-38 at 127; GX-39 at 129; GX-40 at 131; GX-45 at 146; GX-51 at 166; GX-52 at 169; GX-56 at 182; GX-60 at 196; GX-61 at 200; GX-65 at 213; and (x) two Forms 4473 did not contain a recertification signature and/or recertification date, see Admin. Hearing Tr. at 59:2-60:7 (Karmgard, DeLuna).

DeLuna's Report of Violations includes responses Story, on behalf of Borchardt Rifle, gave to DeLuna during the inspection regarding the violations for which he was cited.  A majority of the responses stated: "Licensee stated that they were oversights" or "Licensee stated that he could not account for the oversight."  Administrative Record GX-17 at 56, 60, 62, 63, 64, 65, 66.  In October 2007, Story also submitted written responses addressing each violation disclosed in the August 2007 compliance inspection.  See Administrative Record GX-17A at 67-78.  In response to the first violation for failing to properly execute Forms 4437 in seventeen instances, Story responded:

> I realize most of these errors are oversights and my attention to paper work & book keeping has sometimes been lax and inadequate.  I have begun a new procedure for paperwork that includes a time with no distractions, complete attention to the details of the pertinent form or book, and a review weekly so any problems can be corrected in a timely manner.  I have arranged for a part-time assistant to help with the book and paper work. This assistant plans to attend available ATF seminars.

Administrative Record GX-17A at 67.[5]  Regarding the misplaced firearm reported in the second violation, Borchardt Rifle reported that the item was located in the shop on September 19, 2007, and wrote that employees had been cautioned regarding storage of firearms.  See Administrative Record GX-17A at 68.  Story responded to the third violation -- transfer of a firearm without conducting a NICS background check -- stating: "I sometimes jot down the number from NICS, & then

---

[5] Story made similar responses to the seventh, eighth, ninth, tenth, and eleventh violations, which all address deficiencies in Borchardt Rifle's completion of Forms 4473.  See Administrative Record GX-17A at 73-77.

apparently failed to transfer the number to the 4473 in these two instances.  This probably occurs due to interruptions or distractions."  Administrative Record GX-17A at 69.  Regarding the duplicate and triplicate serial numbers and the four Forms 4473 that were out of sequence, Story explained that there was a transpositional error in his acquisition and disposition book and stated that "from this date on, the information will be entered in the A&D book with more care and the book will also be checked regularly."  Administrative Record GX-17A at 72.

On April 19, 2008, Cook issued a Notice of Revocation of Borchardt Rifle's license as a manufacturer of firearms.  See Administrative Record GX-1, at 1.  On May 8, 2008, Story, on behalf of Borchardt Rifle, timely filed a request for a hearing.  See Administrative Record GX-2, at .  The administrative hearing was held on September 16, 2008.  See Administrative Record at GX-5; Admin. Hearing Tr.  At the hearing, DeLuna testified about each of the violations that she found during the August 2007 inspection.  See Admin. Hearing Tr. at 5:25-64:23 (Karmgard, DeLuna). Story testified on behalf of Borchardt Rifle.  See Admin. Hearing Tr. at 65:10-76:20 (Story, Hearing Officer).  He explained that DeLuna's inspection got his attention, see Admin. Hearing Tr. at 65:19-21 (Story), and stated: "I'll be the first one to admit, my paperwork is very sloppy . . . I don't think I've shown in here where I'd done anything purposely illegal.  It's just carelessness in my paperwork," Admin. Hearing Tr. at 66:8-17 (Story).  Story also stated: "I know this is serious, but I was not intentionally breaking the law."  Admin. Hearing Tr. at 73:16-18.  He explained: "I'm approaching 70 years old, and I forget a lot of stuff, you know, like all of us do."  Admin. Hearing Tr. at 67:20-22 (Story).  He also explained:

> Well, living in a rural area, you get to know a lot of people and you become friends with people.  You know, you get to talking to them, and I believe that's where a lot of my mistakes occurred, right then and there.  You know, just get to talking with them and kind of forget about the paperwork that's very important.

Admin. Hearing Tr. at 71:10-16 (Story).  The Hearing Officer indicated to Story that ninety percent of his Forms 4473 had errors and omissions, and Story explained that he did not finish high school and that his paperwork "really lacks, big time lacks."  Admin. Hearing Tr. at 75:18-76:4 (Hearing Officer, Story).

Following the hearing, the hearing officer recommended that the license be revoked.  On October 28, 2008, Cook issued a Final Notice of Revocation of Borchardt Rifle's federal firearms licence, setting forth her findings that Borchardt Rifle willfully violated the Gun Control Act, and the regulations promulgated thereunder, 27 C.F.R. Part 478, by: (i) transferring a firearm without conducting the required background check; (ii) failing to report the theft or loss of a firearm; (iii) repeat violations of failing to properly record manufacturer information in its acquisition and disposition book; (iv) failing to obtain ATF Form 4473 when transferring a firearm to a non-licensee; (v) assigning six duplicate and two triplicate transferor's transaction serial numbers to Form 4473; and (vi) errors or omissions on forty-three of fifty-two Forms 4473, some of which contained multiple errors or omissions.  See Administrative Record GX-1, at 2-7.

## PROCEDURAL BACKGROUND

Borchardt Rifle brought this action pursuant to Section 923(f)(3) of Title 18 of the United States Code seeking de novo review of the ATF's revocation of its federal firearms license. See Petition for Judicial Review at 1.  Section 923(f)(3) of Title 18 of the United States Code states:

> The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation.

18 U.S.C. § 923(f)(3).  In the petition, Borchardt Rifle argues that it did not willfully violate 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.102, because it did not intentionally, knowingly, or

recklessly violate the requirements that those statutes and regulations prescribe.  See Petition ¶¶ 13, 20, 25, 29, 32, 35, 38, 47, 50, 53, 59, 69 at 2-11.  Borchardt Rifle also contends that, with regard to the alleged violation of 18 U.S.C. § 923(g)(1)(A) for failure to report within forty-eight hours the theft or loss of a Mauser Model 98-action firearm, it was not lost or stolen, but it was misplaced.  See Petition 15-19.  Borchardt Rifle also argues that 27 C.F.R. § 478.124(c)(3)(iv) is void and of no force or effect to the extent that it requires the licensee to record on the Form 4473 the date on which the licensee contacted the NICS, or information relating to the initial NICS response, as such requirements exceed the requirements that Congress imposed in 18 U.S.C. § 922(t)(4) and are not necessary to carry out the provisions of Gun Control Act.  See Petition ¶ 45, at 7.

Cook, the named Defendant in this action pursuant to 18 U.S.C. § 923(f)(3), moves the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, for an order granting her summary judgment.  Cook set forth the grounds for her motion more fully in the Memorandum of Law she filed concurrently with the motion.  See Defendant's Memorandum of Law in Support of Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56, filed October 27, 2009 (Doc. 14)("Memo.").  Cook argues that because Borchardt Rifle's willfulness is a legal determination, based on undisputed facts, disposition of this matter by means of summary judgment is appropriate.  See Memo. at 3.  She contends that, because Borchardt Rifle did not challenge the factual findings relative to Count I (failure to conduct a required NICS background check), Count IV (failure to obtain a required ATF Form 4473), Count V (duplicate and triplicate transaction serial numbers on Forms 4473), and Counts VI-X and XII (other errors and omissions on Forms 4473) in the Petition for Judicial Review, and because Cook argues that a single willful violation is sufficient to uphold the revocation of Borchardt Rifle's federal firearms license, the Court should grant summary judgment and uphold the revocation.  See Memo. at 3, 10.

Cook argues that a violation is willful if the "dealer understands the requirements of the law but knowingly fails to follow them or was indifferent to them."  Memo. at 12 (quoting Cucciarra v. Sec'y of Treasury, 652 F.2d 28, 30 (9th Cir. 1981)).  Cook contends that the Court should grant her motion for summary judgment if the undisputed evidence shows that: (i) Borchardt Rifle violated the Gun Control Act or the related regulations; (ii) before the violation, Borchardt Rifle knew of its legal obligation under the regulations; and (iii) Borchardt Rifle purposefully disregarded or was plainly indifferent to its obligation.  See Memo. at 13.  Cook stresses that it is undisputed that there were multiple violations of the Gun Control Act regulations and that Story had knowledge of his legal obligations, because he had been informed of them during Chapa's 2002 compliance/application inspection.  See Memo. at 13-14.  Cook also argues that some of Borchardt Rifle's 2007 violations are repeat violations from the 2002 inspection.  Cook contends that this evidence shows Borchardt Rifle's plain indifference to known legal obligations.  See Memo. at 14. Cook argues that the strongest evidence of this indifference is with respect to Count V -- duplicate and triplicate transaction serial numbers and transaction serial numbers that did not fall within the numerical sequence -- and Counts VI, IX, and X -- other errors and omissions on Forms 4473 -- which are repeat violations from the 2002 inspection.  See Memo. at 15.  Cook concedes, however, that Story did not purposefully disregard the regulatory requirements.  See Memo. at 15 n.5.

Cook also argues that the ATF regulation under 27 C.F.R. § 478.21(a) is valid and proper because it is necessary to carry out the provisions of the Gun Control Act.  See Memo. at 21.  Cook contends that the re-certification signature and date on a Form 4473, which is required if there is a delay in a firearm transfer, pursuant to § 478.21(a), is necessary because a transferee may become prohibited from possessing a firearm between the date of the original certification and the date of

transfer.  See Memo. at 21.

In its response, Borchardt Rifle interpreted Cook's brief to be seeking summary judgment only on Counts V, VI, IX, and X because Cook did not argue whether the violations in the other counts were willful.  See Petitioner's Opposition to Respondent's Motion for Summary Judgment at 2, filed December 9, 2009 (Doc. 16)("Response").  Its opposition, therefore, only responds to Counts V, VI, IX, and X.  Borchardt Rifle argues that the Court should adopt the standard for willfulness set forth by the United States Courts of Appeals for the Sixth and Ninth Circuits, which have held that a licensee willfully violates the Gun Control Act "when it intentionally, knowingly, or recklessly violates known legal requirements."  Armalite, Inc. v. Lambert, 544 F.3d 644, 648-49 (6th Cir. 2008).  See General Store, Inc. v. Van Loan, 560 F.3d 902, 924 (9th Cir. 2009)(holding that a violation of the Gun Control Act requires a willful violation that is a deliberate, knowing, or reckless violation of its requirements).  Borchardt Rifle argues that plain indifference is equivalent to recklessness and a finding of plain indifference must focus on the actor's state of mind.  See Response at 6 (citing Kolstad v. American Dental Assn., 527 U.S. 526, 535 (1999)).  Because recklessness requires focus on the licensee's state of mind, Borchardt Rifle argues that past violations cannot demonstrate plain indifference, because there must be proof of the licensee's state of mind at the time of the violation.  See Response at 6.  Borchardt Rifle contends that, viewing the evidence in the light most favorable to it, the evidence demonstrates that Story was negligent, not reckless, and absent evidence concerning Story's state of mind at the time of the violations, the Court cannot find that Cook is entitled to summary judgment as a matter of law.  See Response at 8-9.

Borchardt Rifle argues that 27 C.F.R. § 478.21(a) is void because it purports to delegate to Cook the authority to call for information on the Form 4473 which Congress did not specifically

require by statute in the Gun Control Act.  See Response at 9.  Borchardt Rifle focuses on the language of 18 U.S.C. § 923(g)(1)(A), which states that a licensed dealer must maintain records "in such form, as the Attorney General may by regulations prescribe," and on 18 U.S.C. § 926(a), which authorizes the Attorney General to prescribe "only such rules and regulations as are necessary" to carry out 18 U.S.C. § 923(g)(1)(A).  Borchardt Rifle argues that 27 C.F.R. § 478.21(a) improperly delegates to the ATF Director the power to establish the form of records, without any opportunity for public comment.  See Response at 10.

In reply, Cook argues that the Sixth Circuit's analysis and holding in Armalite, Inc. v. Lambert is an "excellent example" of a court's analysis of an ATF firearms-license revocation, because the Sixth Circuit found, as a matter of law, that a single violation suffices to revoke a license.  The Sixth Circuit determined that the ATF was authorized to revoke Armalite's firearms license based upon one violation -- Armalite's failure to provide required information about manufacture/type of firearm on six Forms 4473.  Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. 16) at 1-2, filed January 20, 2010 (Doc. 22)("Reply").  Cook contends that the facts of the case are similar to the facts before the Court: Armalite was inspected in 2004, alerted to violations on its Form 4473 and, when inspected again in 2005, the ATF found errors in over half of Armalite's Forms 4473 and revoked its license.  See Reply at 1 n.1.  Cook argues that, because revocation of a license is proper based upon a single willful violation, she focused her arguments on Counts V, VI, IX, and X because she believes those counts are the four most apparent willful violations and because they were repeat violations from the 2002 inspection.  See Reply at 2-3.

Cook also argues that, should the Court grant summary judgment on any one or more of Counts V, VI, IX, or X, the Court should uphold the revocation of Borchardt Rifle's firearms license

and the issue concerning the validity of Count XII, which is based upon 27 C.F.R. § 478.21(a), would be moot.  See Reply at 5.  Nevertheless, Cook argues that 27 C.F.R. § 478.21(a) was properly promulgated as a regulation because it is necessary to carry out the provisions in 18 U.S.C. § 923(g)(1)(A) to assure that federal firearms licensees properly maintain firearms records and that the records address the requirements of the Gun Control Act.  See Reply at 8-9.  Cook cites to three cases which support her authority, as Director of the ATF, to promulgate regulations.  See Nat'l Rifle Ass'n v. Brady, 914 F.2d 475, 479 (4th Cir. 1990)(finding that the ATF may implement such regulations as are necessary to carry out the purposes of the Gun Control Act and finding that the ATF's determination is entitled to deference in determining which regulations are necessary); RSM, Inc. v. Herbert, Civ. No. WMN-05-847, 2006 U.S. Dist. LEXIS 97237, at *8 (D. Md. Mar. 15, 2006)(finding that 27 C.F.R. § 478.78 is not void because 18 U.S.C. § 926 grants the ATF authority to promulgate rules that are necessary to carry out the Gun Control Act's provisions); Armalite, Inc. v. Lambert, 512 F. Supp. 2d 1070 (N.D. Ohio 2007).

At the hearing, Assistant United States Attorney Jan E. Mitchell, on behalf of Cook, argued that Congress has imposed strict record-keeping requirements on federal licensed firearms dealers, and that Form 4473 has been found to promote the purposes of the Gun Control Act in that it allows firearms to be traced and prevents transfers to persons prohibited from possessing firearms.  See Transcript of Hearing at 2:23-3:3 (taken February 5, 2010)("Tr.")(Mitchell).[6]  Mitchell argued that a firearms dealer that fails to keep the required records seriously undermines the effectiveness and purpose of the Gun Control Act and ultimately endangers society.  See Tr. at 3:7-10 (Mitchell).  She explained that the ATF has two tools of enforcement: an admonitory letter and revocation.

_____

[6] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

There are no fines, no probationary periods, and no suspension.  See Tr. at 3:11-13 (Mitchell).  She argued that summary judgment is appropriate in this case because Story was made aware of the ATF regulations, he signed an acknowledgment that he knew and understood the regulations, and yet he continued to make mistakes.  See Tr. at 15:16-24 (Mitchell).  Ms. Mitchell contends that to permit licensees to continue to engage in the sale or manufacture of weapons without holding them to some standard of compliance with the regulations would eviscerate the purposes of the regulations. See Tr. at 15:20-24 (Mitchell).

Richard A. Gardiner, counsel for Borchardt Rifle, conceded that the Court needs to find only one willful violation to uphold the revocation of Borchardt Rifle's license.  See Tr. at 20:11-13 (Gardiner).  He argued that the Court should look to Armalite, Inc. v. Lambert, 544 F.3d 644 (6th Cir. 2008) and General Store, Inc. v. Van Loan, 560 F.3d 920 (9th Cir. 2009), for the interpretation of willfulness in 18 U.S.C. § 923.  See Tr. at 16:4-7 (Gardiner).  Mr. Gardiner described willfulness as having two elements: (i) actual knowledge of the legal requirements; and (ii) that the licensee acted intentionally, knowingly, or recklessly.  See Tr. at 16:7-14 (Gardiner). Mr. Gardiner argued that reckless should be interpreted in the context of the Gun Control Act in the same way that it is interpreted when finding punitive damages -- requiring scienter.  See Tr. at 16:22-25 (Gardiner).  Mr. Gardiner conceded that Borchardt Rifle's past errors on Forms 4473 is competent evidence to show its knowledge of the Gun Control Act regulations.  See Tr. at 17:25-1 (Gardiner).  Mr. Gardiner also conceded that Cook does not have to prove that Borchardt Rifle had a bad purpose or bad motive to show that its violations were reckless.  See Tr. at 19:13-15 (Gardiner).  He further conceded that if the Court finds a willful violation on any Count other than Count XII, Borchardt Rifle's argument regarding the validity of 27 C.F.R. § 478.78 is moot.  See Tr. at 25:18-22 (Gardiner).

## STANDARDS OF REVIEW

In an action where a federal firearms licensee has filed a petition seeking judicial review, two legal standards are pertinent to the disposition of the case.  First, the court must comply with the standard for summary judgment pursuant to rule 56.  Second, the court must conduct a de novo review pursuant to 18 U.S.C. § 923(f)(3).

### 1.    Summary Judgment Standard.

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"   Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. at 323.

Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts that would be admissible in evidence showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324.  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  "It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 256 (1986).   See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation omitted); Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990)(stating that the party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.")(internal quotation omitted).

     "The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."   Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 U.S. Dist. LEXIS 45838,  at * 1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 U.S. Dist. LEXIS 45838, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

     Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."   Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  The mere existence of a scintilla of evidence will not avoid summary judgment. See Vitkus v. Beatrice Co., 11 F.3d at 1539.  There must be sufficient evidence on which the

fact-finder could reasonably find for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251; Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted).  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### 2.  De Novo Review Under 18 U.S.C. § 923(f)(3).

The Gun Control Act of 1968 "requires every person who engages in business as an importer, manufacturer, or dealer in firearms or ammunition to be properly licensed by the Secretary of the Treasury." Harrison v. United States ex rel. Dep't of the Treasury, No. CIV 04-100-SPS, 2006 U.S. Dist. LEXIS 82348, at *10 (E.D. Okla. Nov. 9, 2006)(quoting Trader Vic's Ltd. v. O'Neill, 169 F. Supp. 2d 957, 962 (N.D. Ind. 2001)). See 18 U.S.C. § 923(a).  The Attorney General may, after notice and opportunity for a hearing, revoke a license if the licensee has willfully violated any provision of the Gun Control Act, or any rule or regulation prescribed by the Attorney General. See 18 U.S.C. § 923(e).  If the license is revoked, the licensee is entitled to a hearing to review the revocation, if the licensee so requests.  See 18 U.S.C. § 923(f)(1)-(2).  If, after the hearing, the Attorney General decides not to reverse his or her decision, the licensee may seek further judicial review in a United States District Court.  A district court reviews a licensee's petition to review the ATF's revocation of his or her license de novo.  Title 18, Section 923(f)(3) of the United States Criminal Code provides:

If after a hearing held under paragraph (2) the Attorney General decides not to

> reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party.  The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2).  If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 953(f)(3).  The de novo standard of review "means that the ATF's decision [to revoke a license] is entitled to no presumption of correctness and that the district court may attach such weight, if any, as it deems appropriate to the ATF's determinations and decision."  Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 348 F. Supp. 2d 1299, 1306 (S.D. Ala. 2004), aff'd 415 F.3d 1274 (11th Cir. 2005).  See 3 Bridges, Inc. v. United States, 216 F. Supp. 2d 655, 657 (E.D. Ky. 2002)(stating that the ATF's "administrative decision is not clothed in this Court with any presumption of correctness.").  The Attorney General's decision may be upheld if the court concludes, in its own judgment, that the evidence supporting the Attorney General's decision is substantial.  See Harrison v. United States ex rel. Dep't of the Treasury, 2006 U.S. Dist. LEXIS 82348, at *13 (quoting Breit & Johnson Sporting Goods, Inc. v. Ashcroft, 320 F. Supp. 2d 671, 687 (N.D. Ill. 2004)).

Courts have interpreted the de novo standard of review under 18 U.S.C. § 923(f) narrowly. See Stein's v. Blumenthal, 649 F.2d 463, 464 n.2 (7th Cir. 1980)("[T]he courts under 18 U.S.C. § 923(f)(3) may only determine whether the Secretary's decision was authorized."); Francis v. United States BATF, No. CIV-05-380-RAW, 2006 U.S. Dist. LEXIS 26451, at *5 ("The de novo review simply allows the Court to go beyond the evidence considered at the § 923(f)(2) hearing and to make an independent determination, giving no special deference to the ATF, of

whether the revocation was authorized."); Pinion Enter., Inc. v. Ashcroft, 371 F. Supp. 2d 1311, 1314-15 (N.D. Ala. 2005)("The language of § 923(f)(3) does not call upon this Court to decide whether it would revoke the license in it's [sic] own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license."); E&B Sporting Goods v. McCarron, No. 3:04-CV-1535(JCH), 2006 U.S. Dist. LEXIS 8076, at *12 (D. Conn. Feb. 21, 2006); Cisewski v. Department of Treasury, 773 F. Supp. 148, 150 (E.D. Wisc. 1991)("[T]he court's review is limited to determining whether the decision made by the Secretary was authorized.").

Summary judgment is appropriate in a de novo review of the ATF's administrative record when the material facts developed at the administrative hearing are not substantially drawn into question by the party petitioning for review.  See Cucchiara v. Sec'y of the Treasury, 652 F.2d 28, 30 n.1 (9th Cir. 1981), cert. denied, 455 U.S. 948 (1982); Harrison v. United States ex rel. Dep't of the Treasury, 2006 U.S. Dist. LEXIS 82348, at *2 (finding that, because there were no deficiencies in the administrative record, the Court could conduct a de novo review of the administrative record and dispose of the appeal by summary judgment).  In Cucchiara v. Sec'y of Treasury, the Ninth Circuit explained:

> [B]ecause the procedure for review pursuant to 18 U.S.C. § 923(f)(3) permits the district court to enter judgment on the basis of the administrative record when no substantial reason to receive additional evidence is present, the practice of the courts has been to grant judgment summarily when the material facts developed at the administrative hearing, which the court also concludes justify non-renewal are not substantially drawn into question by the party petitioning for review.

652 F.2d at 30 n.1 (internal quotation omitted).

## ANALYSIS

Under the de novo standard of review set forth in 18 U.S.C. § 923(f)(3), the Court will

-21-

examine all of the evidence anew, giving no special deference to the ATF, to determine whether the revocation of Borchardt Rifle's federal firearms license was authorized.  In this case, the Court finds that it does not require any additional evidence beyond that in the Administrative Record and in the transcript of the Administrative Hearing to make this determination.  Because the undisputed evidence demonstrates numerous repeated violations of the regulations which gave rise to Count V (duplicate and triplicate transaction serial numbers on Forms 4473), Count IX (Forms 4473 missing firearm identification information), and Count X (twelve Forms 4473 missing Borchardt Rifle's signature and/or date) in Borchardt Rifle's Petition for Judicial Review, the Court finds that these violations demonstrated plain indifference and thus constitute willful violations under 18 U.S.C. § 923.  The Court, therefore, will grant Cook's motion for summary judgment and uphold the ATF's revocation of Borchardt Rifle's license.

## I.   THE COURT HAS SUFFICIENT EVIDENCE TO DECIDE THIS MOTION AS A MATTER OF LAW.

Borchardt Rifle does not dispute an overwhelming majority of the facts presented in Cook's motion for summary judgment, which relies entirely upon the Administrative Record and the transcript of the Administrative Hearing.  In its briefing, Borchardt Rifle raised no genuine issues of material fact and stated that the facts regarding the violations in Counts V, VI, IX, and X are undisputed.  See Response at 8.[7]  In the briefing, Borchardt Rifle did not request a trial before the Court, nor did its briefing include any additional evidence or point to any additional evidence it will offer if there is a trial.  At the hearing on the motion for summary judgment, Mr. Gardiner, Borchardt Rifle's attorney, did not offer additional evidence, request an opportunity to present

---

[7] Borchardt Rifle contested the way Cook characterized the percentage of errors in the Forms 4473 in her motion for summary judgment, but did not contest that there were errors or the number of errors.  See Response at 6-8.

additional evidence to the Court, or point to additional evidence it would or could present at trial. Given this apparent reliance on the existing record by both parties, the Court inquired whether it could look at the facts presented, which are largely undisputed, and determine whether they support a finding of the requisite reckless scienter. In response, Mr. Gardiner stated: "No, I don't believe you can do that, Your Honor. I believe that those facts do not establish the requisite scienter, that you do have to deny summary judgment, and you have to hold a trial to make the determination for yourself as to what the . . . petitioner's state of mind was." Tr. at 22:5-10 (Gardiner). Ms. Mitchell argued that direct evidence of Story's state of mind is not necessary because there is ample circumstantial evidence, which demonstrates that Story had been informed on previous inspections about his deficient paperwork and yet made repeated errors on his Forms 4473. According to Ms. Mitchell, Story's repeated carelessness rises to the level of plain indifference, which is sufficient to show willfulness. See Tr. at 29:9-25 (Mitchell). She also argued that "the state of mind of the licensee is not going to be any more relevant from his testimony than it is from his written statements and his testimony at the administrative record." Tr. at 30:5-10 (Mitchell).

The parties' arguments have not been clear. What Borchardt Rifle appears to be arguing is threefold: (i) that there is a dispute about the applicable standard for willfulness; (ii) that Cook must produce direct evidence of Story's state of mind, and circumstantial evidence is not sufficient evidence to prove willfulness; and (iii) it is entitled to a trial. Ms. Mitchell compounded the confusion by agreeing at the hearing that there is a dispute about the standard for willfulness. See Tr. at 4:6-8 (THE COURT: What is the state of the law? Is this just all over the place? MITCHELL: I think that."). After careful review of the applicable law, the Court concludes: (i) there is not a dispute about the applicable standard for willfulness; (ii) Cook does not have to produce direct evidence of willfulness to meet the applicable standard; and (iii) Borchardt Rifle is entitled to de

novo review and not necessarily a new trial.  Because the Court concludes that there is sufficient circumstantial evidence to show Borchardt Rifle's willfulness, and because Borchardt Rifle has not pointed to any new evidence it wants to add to the record, the Court concludes that Cook has established willfulness.

### A.   THE COURT AND THE PARTIES AGREE ON THE STANDARD FOR WILLFULNESS.

In her memorandum in support of the motion for summary judgment, Cook stated: "Not a single court has, in an ATF license revocation hearing, adopted the 'intentional, knowing or reckless' standard suggested by Borchardt Rifle in its Petition." Memo. at 12-13.  Borchardt Rifle refuted this position in its response, citing the decisions of the Sixth and Ninth Circuits. See Response at 2-3 (citing Armalite, Inc. v. Lambert and General Store, Inc. v. Van Loan).  At the hearing, Ms. Mitchell indicated that the statement in her memorandum was incorrect, and she advocated that the Court apply the standard for willfulness set forth in Armalite, Inc. v. Lambert and General Store, Inc. v. Van Loan.  See Tr. at 3:25-4:25 (Court, Mitchell). In her memorandum, Cook argued that a violation is willful if the licensee "knew of his legal obligation and purposefully disregarded or was plainly indifferent to the requirements."  Memo. at 12 (quoting Lewin v. Blumenthal, 590 F.2d 268, 269 (8th Cir. 1979); Armalite, Inc. v. Lambert, 544 F.3d at 648; RSM, Inc. v. Herbert, 466 F.3d 316, 321 (4th Cir. 2006); Article II Gun Shop v. Gonzales, 441 F.3d at 498; Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 415 F.3d 1274, 1276 (11th Cir. 2005); Perri v. Department of the Treasury, Bureau of Alcohol, Tobacco, and Firearms, 637 F.2d 1332, 1336 (9th Cir. 1981); Harrison v. United States ex rel. Dep't of the Treasury, 2006 U.S. Dist. LEXIS 82348, at *10).  Cook also relied upon the standard set forth in Armalite, Inc. v. Lambert in her reply brief.  See Reply at 1-3.

Although the parties at the hearing seemed to dispute the standard for willful violations of § 923 of the Gun Control Act, they both relied on the same cases for the standard -- specifically the Sixth Circuit's holding in Armalite, Inc. v. Lambert and the Ninth Circuit's holding in General Store, Inc. v. Van Loan.  In Armalite, Inc. v. Lambert, the Sixth Circuit held that a licensee willfully violates the Gun Control Act "when it intentionally, knowingly or recklessly violates known legal requirements."  544 F.3d at 648.  The Sixth Circuit also held that "omissions amount[] to reckless violations of known legal obligations or what comes to the same thing: a plain indifference to known legal obligations."  544 F.3d at 649.  The Ninth Circuit, in General Store, Inc. v. Van Loan, affirmed the district court's use of the definition of "willfully" set forth in Perri v. Department of the Treasury, Bureau of Alcohol, Tobacco, and Firearms, 637 F.2d 1332 (9th Cir. 1981): willfulness is found "when a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them." General Store, Inc. v. Van Loan, 560 F.3d at 923 (quoting  Perri v. Dep't of the Treasury, 637 F.2d at 1336).  The Ninth Circuit explained that indifference is the same as reckless disregard.  See General Store, Inc. v. Van Loan, 560 F.3d at 924.

Although Ms. Mitchell took the position at the hearing that the standard for willfulness is not settled among the courts, the Court disagrees.  The standard for willfulness appears to be well-settled across the circuits which have addressed ATF license revocations based on willful violations of § 923 of the Gun Control Act.  The United States Court of Appeals for the Tenth Circuit has not addressed the standard for willfulness in 18 U.S.C. § 923.[8]  The majority of the other

---

[8] The Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit does not recommend any general instruction regarding willfulness because of its many meanings.  See Tenth Circuit Pattern Criminal Jury Instructions 1.38 at 62 ("A 'willfulness' requirement may impose on the government the burden of proving that the defendant had knowledge of his conduct, or that his conduct was unlawful, or of the precise legal duty, the violation of which forms the substance of the charges against the defendant.").

Courts of Appeals, however, have, and have reached a common consensus on the appropriate standard.  The Ninth Circuit, in General Store, Inc. v. Van Loan, noted that five circuits -- the Fourth, Sixth, Seventh, Eighth, and Eleventh --  in addition to the Ninth Circuit, have held that a willful violation is "a deliberate, knowing, or reckless violation of its requirements."  560 F.3d at 924 (citing Armalite Inc. v. Lambert, 544 F.3d at 647; RSM, Inc. v. Herbert, 466 F.3d at 321; Willingham Sports, Inc. v. BATF, 415 F.3d at 1277; Stein's Inc. v. Blumenthal, 649 F.2d at 467; Lewin v. Blumenthal, 590 F.2d at 269 (8th Cir. 1979)).  In Vineland Fireworks Co. v. BATF, 544 F.3d 509 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit held that it was reasonable for the ATF to interpret "willful violation" under 18 U.S.C. § 843(b)(2) in the same way that six Courts of Appeals have interpreted "willful violation" under § 923.  See 544 F.3d at 518 ("The six Courts of Appeals addressing what constitutes a 'willful' violation of the firearms licensing provisions have agreed on an interpretation, holding that a firearms dealer's violation is willful where he "knew of his legal obligation and purposefully disregarded or was plainly indifferent to the . . . requirements.")(citing  Lewin v. Blumenthal, 590 F.2d at 269; RSM, Inc. v. Herbert, 466 F.3d at 322; Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 415 F.3d at 1276; Appalachian Res. Dev. Corp. v. McCabe, 387 F.3d 461, 464 (6th Cir. 2004); Perri v. Dep't of the Treasury, 637 F.2d at 1336; Stein's Inc. v. Blumenthal, 649 F.2d at 467).  Recently, the United States Court of Appeals for the Fifth Circuit also adopted the same standard as the other six circuits in Athens Pawn Shop, Inc. v. Bennett, No. 09-40057, 2010 U.S. App. LEXIS 2005 (5th Cir. Jan. 28, 2010), stating: "To prove that a firearms dealer 'willfully' violated the law, ATF must show that the dealer either intentionally and knowingly violated its obligations or was recklessly or plainly indifferent despite the dealer's awareness of the law's requirements." 2010 U.S. App. LEXIS 2005, at *2 (citing Armalite, Inc. v. Lambert, 544 F.3d at 648; RSM, Inc.

v. Herbert, 466 F.3d at 321-22; Article II Gun Shop, Inc. v. Gonzales, 441 F.3d at 497; Willingham

Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 415 F.3d at 1277; Perri v.

Dep't of Treasury, 637 F.2d at 1336).

Although the parties spent a majority of the hearing arguing the standard for finding

willfulness and appeared to be in dispute over the appropriate standard, the Court believes that the

confusion at the hearing arose because Mr. Gardiner and Ms. Mitchell each urged the Court to focus

on different aspects of the standard.  Mr. Gardiner focused on the "deliberate, knowing, or reckless"

language, see General Store, Inc. v. Van Loan, 560 F.3d at 924, whereas Ms. Mitchell stresses the

Ninth Circuit's explanation in that same decision, as well as in the other cases that both parties rely

on, that plain indifference is the same as reckless disregard, see General Store, Inc. v. Van Loan, 560

F.3d at 924.  The Court believes that the parties are not in dispute over what they believe the

standard to be, but rather, what evidence is needed to prove willfulness.  Borchardt Rifle appears

to insist on direct evidence.  Cook is largely relying on circumstantial evidence.  They also differ

on whether a trial is necessary.  The Court believes that the Fifth Circuit's recent combination of

both of the aspects of the standard that the parties stressed at the hearing is the most clear

articulation of willfulness under § 923:  To prove that a firearms dealer 'willfully' violated the law,

ATF must show that the dealer either intentionally and knowingly violated its obligations or was

recklessly or plainly indifferent despite the dealer's awareness of the law's requirements." Athens

Pawn Shop, Inc. v. Bennett, 2010 U.S. App. LEXIS 2005, at *2.  Given that Congress has not

disturbed the Court's longstanding interpretations of willfulness, there is no sound reason for the

Court to apply a different one.

**B.  COOK IS NOT REQUIRED TO PRESENT DIRECT EVIDENCE OF STORY'S STATE OF MIND TO ESTABLISH THE WILLFULNESS OF BORCHARDT RIFLE'S VIOLATIONS.**

Although the parties agree on the standard for willfulness, they disagree on the evidence that must be present to demonstrate Borchardt Rifle's willfulness.  Cook argues that the circumstantial evidence in the record demonstrates Borchardt Rifle's willfulness.  See Tr. at 12:18-24 (Mitchell) ("I would think that the required proof would be supported by the fact that [Story] had made prior mistakes and was acquainted with the law and that it then would follow that he was plainly indifferent to the requirements and his conduct demonstrated that he was plainly indifferent to what the requirements of the statute were.").  Borchardt Rifle disagrees.  See Tr. at 23:1-4 (Gardiner) ("[Cook's] view is if you made mistakes before, then you can essentially just assume that there was willfulness, and I think that standard is . . . an incorrect standard.").  Borchardt Rifle argues that the Court must determine what Story's state of mind was at the time he violated the Gun Control Act to show that he acted willfully.  While the Court does not disagree that such a determination is the Court's task, what Borchardt Rifle appears to be arguing is that only direct evidence will suffice to show state of mind.  In other words, according to Borchardt Rifle, circumstantial evidence will not do.  At the hearing, Mr. Gardiner urged the Court to deny summary judgment so that the Court can hold a trial and make determinations of credibility as to Story's state of mind.  See Tr. at 22:14-23:13 (Gardiner).

Courts have consistently found that willfulness under the Gun Control Act may be inferred based upon circumstantial evidence of knowledge of the requirements and repeat violations.  See Article II Gun Shop, Inc. v. Gonzales, 441 F.3d at 498 (affirming the district court's grant of the ATF's motion for summary judgment based upon a record showing that the licensee "was aware that the [Gun Control] Act does not allow any de minimis number of violations, and he was

obviously aware of the Act's requirements after being cited for numerous violations in the past.")[9];

Stein's Inc. v. Blumenthal, 649 F.2d at 468 (affirming the district court's grant of the ATF's motion

for summary judgment based upon uncontested evidence in the administrative record and holding

that "[e]vidence of repeated violations with knowledge of the law's requirements [is] sufficient to

establish willfulness.")(citation omitted).  The United States Court of Appeals for the Fourth Circuit,

in RSM v. Herbert, affirmed the district court's grant of the ATF's motion for summary judgment

and held that a court may infer willfulness from a licensee's plain indifference, stating:

> [W]hen determining the willfulness of conduct, we must determine whether the acts
> were committed in deliberate disregard of, or with plain indifference toward, either
> known legal obligations or the  general unlawfulness of the actions.  But when
> applying such a formulation of willfulness to an omission -- the failure to act -- there
> is seldom direct evidence that a person intentionally failed to do something that was
> legally required.  Thus, when evaluating omissions alleged to be deliberate, it is often
> necessary to ascertain whether the failure to act resulted from a conscious
> consideration of the legal requirement to act.  While evidence of willfulness in this
> context may be more elusive than in the context of affirmative actions, a court may
> infer willful omission from a defendant's plain indifference to a legal requirement
> to act if the defendant (1) knew of the requirement or (2) knew generally that his
> failure to act would be unlawful.
>
> Because most of Valley Gun's violations in this case were omissions and in the
> absence of direct evidence establishing intentionality, we must evaluate the evidence
> to determine whether Valley Gun showed plain indifference towards known legal
> requirements to act or a more generalized knowledge that its failure to act would be
> unlawful.

RSM v. Herbert, 466 F.3d at 321-22.

---

[9] In the dissenting opinion, Judge Manion argued: "There may be good reasons to revoke the license that Gun World has held for over 25 years, but because the Form 4473 violations are the only basis for revocation, the government must present actual evidence of willfulness, or else the trier of fact should decide."  Article II Gun Shop, Inc. v. Gonzales, 441 F.3d at 500 (Manion, J., dissenting). The Court has found no opinion adopting Judge Manion's argument that "actual" evidence -- which the Court interprets as direct evidence -- must be presented.  Rarely is there direct evidence of scienter, and generally scienter is proved by circumstantial evidence.  Moreover, a petition is entitled to de novo review and not a de novo trial.  There is no found reason to withhold summary judgment when the evidence will remain the same.

Although the United States Court of Appeals for the Tenth Circuit has not addressed the willfulness requirement of 18 U.S.C. § 923, it has acknowledged in criminal cases that the element of willfulness is rarely provable by direct evidence.  See United States v. Brown, 966 F.2d 1049, 1057 (10th Cir. 1993)("Like the existence of an agreement, the element of willfulness 'is rarely provable by direct evidence, and most often can be proven only by inference from the evidence introduced.'")(quoting United States v. Sherman, 576 F.2d 292, 297 (10th Cir. 1978), cert. denied, 439 U.S. 913 (1978)).  Also, in the Title VII area, the Supreme Court and the Tenth Circuit have repeated that discriminatory intent can be shown by circumstantial evidence.  See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)(setting forth a burden-shifting framework for establishing discriminatory animus through circumstantial evidence); Hysten v. Burlington N. Santa Fe Ry. Co., 530 F.3d 1260, 1268 (10th Cir. 2008)(stating that "evidence of retaliatory intent is frequently circumstantial in nature" and applying the McDonnell Douglas burden-shifting framework); Johnson v. Weld County, No. 08-1365, 2010 U.S. App. LEXIS 2595, at *5 (10th Cir. Feb. 8, 2010)(stating that in a Title VII claim, either mode of proof, direct or circumstantial evidence, can suffice to defeat summary judgment).

Borchardt Rifle relies on the Supreme Court's decision in Kolstad v. American Dental Association, 527 U.S. 526 (1999), for the proposition that, to show reckless indifference or plain indifference, the inquiry "ultimately focus[es] on the actor's state of mind."  527 U.S. at 535. Kolstad v. American Dental Association dealt with a Title VII claim, and whether an employer's conduct needs to be independently egregious to satisfy Title VII's requirement that an employer engaged in intentional discrimination with malice and with reckless indifference. See 527 U.S. at 536 (finding that "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages.").  It is not a case

-30-

addressing the willfulness requirement of the Gun Control Act.  Nor does Borchardt Rifle point the Court to any cases that have found that the ATF must provide direct evidence of the licensee's state of mind.  The Court, in its own research, found no case law that supports the proposition that, to satisfy 18 U.S.C. § 923(e), the ATF must prove Story's state of mind at the time he committed errors and/or omissions in his Forms 4473 other than through circumstantial evidence.  The Court also notes that the Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit suggests that finders of fact should not draw a distinction between direct and circumstantial evidence.  See Tenth Circuit Pattern Criminal Jury Instructions 1.07 at 15 ("As a general rule, the law makes no distinction between direct and circumstantial evidence.  The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.").    The Court, therefore, finds that it is unnecessary to require Cook to present direct evidence that Story possessed a reckless state of mind at the time he violated the Gun Control Act, as Borchardt Rifle requests, because the plain language of the Gun Control Act and the case law addressing 18 U.S.C. § 923 do not support such a requirement.

### C. THE UNDISPUTED FACTS PROVIDE SUFFICIENT CIRCUMSTANTIAL EVIDENCE FROM WHICH THE COURT MAY MAKE A DETERMINATION AS A MATTER OF LAW.

Although the overwhelming majority of the material facts presented in the Administrative Hearing and the Administrative Record are undisputed, Borchardt Rifle argues that the Court should deny summary judgment and hear evidence of Story's state of mind at a trial.  While normally entry of summary judgment requires there to be no dispute about any material fact, here, pursuant to 18 U.S.C. § 923(f)(3), the parties are not entitled to a trial, but to de novo review.  See Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 348 F. Supp. 2d at 1307 (stating that the Gun Control Act does not "vest a firearms dealer with an absolute right to an

evidentiary hearing in appealing from an adverse ATF decision.").  There may be factual issues in the record, but as long as there is no dispute about what the record contains, and there is no need for additional evidence, the Court can provide that de novo review in a summary proceeding.  No trial is required unless additional testimony is needed.  There is no sound reason under rule 56 to withhold judgment when the evidence will be the same at trial and the Court can meaningfully conduct de novo review on the present record and when no new evidence is forthcoming.  See Perri v. Dep't of Treasury, 637 F.2d at 1335 (holding that the district court did not abuse its discretion in affirming ATF's license revocation without first receiving repetitive evidence through additional testimony).

In Stein's Inc. v. Blumenthal, the United States Court of Appeals for the Seventh Circuit stated that:

> [B]ecause the procedure for review pursuant to 18 U.S.C. § 923(f)(3) permits the district court to enter judgment on the basis of the administrative record when no substantial reason to receive additional evidence is present, the practice of the courts has been to grant judgment summarily when the material facts developed at the administrative hearing, which the court also concludes justify [the ATF's revocation of a license], are not substantially drawn into question by the party petitioning for review.

649 F.2d at 467 n.7.  The Seventh Circuit held that, while 18 U.S.C. § 923(f)(3) requires de novo review, it does not require a de novo trial, stating:

> [W]e believe that Congress intended to afford the district court the discretion to receive additional evidence to be considered along with that in the administrative record when some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review.  In other words, there is a difference between the "de novo review" required by 18 U.S.C. § 923(f)(3) and a "trial de novo."  We hold that while the statute requires the former, it does not in every case require the latter.

Stein's Inc. v. Blumenthal, 649 F.2d at 466 (internal citation omitted).  In Dimartino v. Buckley, 19 Fed. Appx. 114 (4th Cir. 2001), the Fourth Circuit found that the firearms dealer was not

necessarily entitled to an evidentiary hearing before the district court, stating: "A good reason to hold such a hearing must either appear in the administrative record or be presented by the party petitioning for judicial review." 19 Fed. Appx. at 116.

In Service Arms Co. v. United States Department of Treasury, 76 F.R.D. 109 (W.D. Okla. 1977), the plaintiff presented affidavits that challenged the material facts developed at the administrative hearing. The court held that the appropriate course of action was to conduct a trial. After the trial, the court's review would be based upon both the administrative record as well as any additional evidence submitted at trial. See 76 F.R.D. at 111.[10]

A trial appears appropriate when there are material disputes about the evidence or the parties want to add new evidence. Here, the primary dispute -- if not the only dispute -- is what does the evidence mean and the application of established law to the facts. No party has pointed to new evidence it will present. Borchardt Rifle has not disputed any of the evidence in the Administrative Record or the Administrative Hearing. It has not contested facts with affidavits. Summary judgment is appropriate in a de novo review of the ATF's administrative record when the material facts developed at the administrative hearing are not substantially drawn into question by the party petitioning for review. See Cucchiara v. Sec'y of the Treasury, 652 F.2d at 30 n.1; Harrison v. United States ex rel. Dep't of the Treasury, 2006 U.S. Dist. LEXIS 82348, at *2 (finding that,

---

[10] The United States District Court for the Western District of Oklahoma held an evidentiary hearing instead of a trial, during which a total of four witnesses testified and three exhibits, in addition to the administrative record, were entered. At the hearing, the plaintiff testified that he never willfully or intentionally failed to register a weapon, and that he never willfully violated the Gun Control Act. Nevertheless, the district court found that the plaintiff's failure to make entries in his acquisition and disposition log for the acquisition of a the firearm and the sale of the same constituted a willful violation of the Gun Control Act because of the plaintiff's experience and familiarity with the requirements of the Act and regulations. See Service Arms Co. v. United States, 463 F. Supp. 21, 25 (W.D. Okla. 1978).

because there were no deficiencies in the administrative record, the Court could conduct a de novo review of the administrative record and dispose of the appeal by summary judgment). In this situation, the Court need not conduct a trial, see the same evidence, and hear from the same witnesses who will give cumulative evidence similar to what they gave in the Administrative Hearing, before the Court conducts its de novo review.   See Strong v. United States, 422 F. Supp. 2d 712, 724 (N.D. Tex. 2006)(stating that, "pursuant to section 923(f)(3), and in exercise of its discretion, the court determines that an evidentiary hearing is not required and would serve no useful purpose," where the plaintiff "offered [no] evidence differing substantially from that presented to the hearing officer.").

In its brief, Borchardt Rifle argues that "the only evidence before the Court concerning Story's state of mind is that his attention to paperwork has been sometimes lax and inadequate and he had been sloppy and careless in his paperwork." Response at 8.  Borchardt Rifle does not dispute this evidence.  Rather, it contends that, taking the evidence in the light most favorable to Borchardt Rifle, the evidence demonstrates that, at most, Story was negligent.  See Response at 8-9.  The Court has reviewed the Administrative Record and the Administrative Hearing Transcript, and disagrees with Borchardt Rifle's contention that it has fairly characterized the only evidence before the Court regarding Story's state of mind at the time of his actions giving rise to his violations of the Gun Control Act.  The Administrative Record is replete with evidence of Story's state of mind at the time of the violations.  The Firearms Inspection Report from Chapa's 2002 inspection includes Story's response to the violations for which he was cited: "Licensee stated that they were oversights. Licensee stated that he could not account for the oversights and that he would start to review the forms more closely prior to the customer leaving and that he would also review the forms weekly." Administrative Record GX-13 at 44.  The Report of Violations from DeLuna's 2007 inspection also

details the responses that Story gave to her regarding his cited violations.  See Administrative Record GX-17 at 56 ("Licensee stated that they were oversights.  Licensee stated that he could not account for the oversights and that he would start to review the forms more closely prior to the customer leaving and that he would also review the forms weekly."); GX-17 at 59 ("Licensee stated that he transferred a firearm and forgot to record the information in the A&D book as a disposition."); GX-17 at 60 ("Licensee stated that he could not account for the oversight.  Licensee stated that he would attempt to look at the A&D book and the form to make sure that the numbers matched and that no two forms were assigned the same number.").  Story also submitted responses to the 2007 violations.  See Administrative Record GX-17A at 67 ("I realize most of these errors are oversights and my attention to paper work & book keeping has sometimes been lax and inadequate.  I have begun a new procedure for paperwork that includes a time with no distractions . . . .").  At the Administrative Hearing, Story was also permitted to speak at length about his cited violations.  He explained that DeLuna's inspection got his attention, see Admin. Hearing Tr. at 65:19-21 (Story), and stated: "I'll be the first one to admit, my paperwork is very sloppy . . . I don't think I've shown in here where I'd done anything purposely illegal.  It's just carelessness in my paperwork." Admin. Hearing Tr. at 66:8-17 (Story).  Story also stated: "I know this is serious, but I was not intentionally breaking the law."  Admin. Hearing Tr. at 73:16-18.  He explained: "I'm approaching 70 years old, and I forget a lot of stuff, you know, like all of us do."  Admin. Hearing Tr. at 67:20-22 (Story).  He also explained:

> Well, living in a rural area, you get to know a lot of people and you become friends with people.  You know, you get to talking to them, and I believe that's where a lot of my mistakes occurred, right then and there.  You know, just get to talking with them and kind of forget about the paperwork that's very important.

Admin. Hearing Tr. at 71:10-16 (Story).  The Hearing Officer indicated to Story that ninety percent

-35-

of his Forms 4473 had errors and omissions, and Story explained that he did not finish high school and that his paperwork "really lacks, big time lacks."  Admin. Hearing Tr. at 75:18-76:4 (Hearing Officer, Story).  Borchardt Rifle has not disputed any of this evidence, or the statements that Story made at the hearing.  It has not submitted any affidavits or additional evidence which refutes any evidence in the Administrative Record or in the Administrative Hearing.  Borchardt Rifle has also not stated that, at any trial, it would or could submit any additional evidence that would be inconsistent with what the record already contains.

The Court believes that this volume of undisputed evidence gives a clear and thorough picture of Story's state of mind, and likely a more accurate depiction of his state of mind -- as the explanations Story gave for the 2002 and 2007 inspection reports were taken much closer in time to the alleged incidents -- than testimony the Court could hear at an evidentiary hearing or trial. Borchardt Rifle has not indicated that the evidence at trial would be any different or better than what the Court has now.  The Court, therefore, finds that it does not require any additional evidence beyond that in the Administrative Record and in the transcript of the Administrative Hearing to make the legal  determination before it.

## II.    BORCHARDT RIFLE'S REPEATED VIOLATIONS DEMONSTRATE ITS PLAIN INDIFFERENCE TO THE GUN CONTROL ACT'S REQUIREMENTS.

Cook argues that, in an ATF revocation hearing, willfulness means that the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the requirements. See Reply at 4.  She argues that Borchardt Rifle's repeat violations alone are sufficient to show willfulness, but additionally, the violations in Counts V, IX, and X demonstrate an overall lack of attentiveness to the documentary requirements of conducting a regulated firearms business -- specifically, that forty-three of the fifty-two Forms 4473 in Borchardt Rifle's files reviewed

during the 2007 compliance inspection contained errors and/or omissions.  See Reply at 5. Borchardt Rifle contends that the evidence does not support a finding that it committed these errors and omissions willfully, because to be reckless or plainly indifferent, there must be proof of the actor's state of mind at the time of the violation at issue.  See Response at 6.

   To prove that Borchardt Rifle willfully violated the Gun Control Act, Cook must show that Borchardt Rifle either intentionally and knowingly violated its obligations, or was recklessly or plainly indifferent despite the dealer's awareness of the law's requirements.  See Athens Pawn Shop, Inc. v. Bennett, 2010 U.S. App. LEXIS 2005, at **1-2; General Store, Inc. v. Van Loan, 560 F.3d at 924 ("Five circuits, in addition to ours, have similarly held that a violation of the Gun Control Act requires a willful violation that is a deliberate, knowing, or reckless violation of its requirements.")(citing other circuits); Armalite, Inc. v. Lambert, 544 F.3d at 648 (holding that a dealer willfully violates the Gun Control Act when it intentionally, knowingly or recklessly violates known legal requirements).

   Negligence is insufficient to show willfulness.  See Garner v. Lambert, 345 Fed. Appx. 66, 72 (6th Cir. 2009)(stating that "to the extent the [district] court did not make clear that negligence is insufficient to show willfulness, we reject its analysis"); Armalite, Inc. v. Lambert, 544 F.3d at 647 (rejecting the interpretation that a willful violation of the statute can be shown simply where a licensee "(1) knows what its legal obligations are and (2) fails to comply with those obligations").  Although knowledge alone does not constitute a willful violation of the Gun Control Act, courts have consistently held that repeated violations of the Gun Control Act with knowledge of the licensee's legal requirements and previous warnings by the ATF establishes plain indifference.  See RSM v. Herbert, 466 F.3d at 317 ("Because Valley Gun repeatedly violated requirements of the Gun Control Act with knowledge of the law's requirements and after repeated

warnings by ATF, we hold that Valley Gun's plain indifference toward its known legal obligations

satisfies the willfulness requirement in 18 U.S.C. § 923(e)."). Plain indifference to known legal

obligations satisfies the willfulness requirement of 18 U.S.C. § 923. <u>See Armalite, Inc. v. Lambert</u>,

544 F.3d at 649 (holding that, based on the administrative record, the plaintiff's omissions in Forms

4473 "amounted to reckless violations of known legal obligations or what comes to the same thing:

a plain indifference to known legal obligations."); <u>RSM, Inc. v. Herbert</u>, 466 F.3d at 321 ("Thus,

when determining the willfulness of conduct [under the Gun Control Act], we must determine

whether the acts were committed in deliberate disregard of, or with plain indifference toward, either

known legal obligations or the general unlawfulness of the actions."); <u>Willingham Sports, Inc. v.

Bureau of Alcohol, Tobacco, Firearms and Explosives</u>, 415 F.3d at 1277 ("We agree with those five

circuits that a showing of purposeful disregard of or plain indifference to the laws and regulations

imposed on firearms dealers shows willfulness . . . ."); <u>Perri v. Dep't of the Treasury, Bureau of

Alcohol, Tobacco, and Firearms</u>, 637 F.2d at 1336 (noting that a willful violation of the Gun Control

Act "is established when a dealer understands the requirements of the law, but knowingly fails to

follow them or was indifferent to them."); <u>Stein's Inc. v. Blumenthal</u>, 649 F.2d at 467 ("The

Secretary need only prove that the petitioner knew of his legal obligation and purposefully

disregarded or was plainly indifferent to the recordkeeping requirements.")(internal quotation marks

omitted); <u>Lewin v. Blumenthal</u>, 590 F.2d at 269 ("[T]he Bureau must prove that the petitioner knew

of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping

requirements.").

      In <u>Service Arms Co. v. United States</u>, the United States District Court for the Western

District of Oklahoma, in considering the licensee's argument that he never willfully or intentionally

failed to register a weapon, noted that the ATF's administrative record indicated that ATF agents

had explained the record-keeping requirements of the Gun Control Act to the licensee the year before he failed to make entries in the acquisition and disposition log for the acquisition of a .45 caliber Colt semi-automatic pistol.  See 463 F. Supp. at 25.  The court held:

> In view of the foregoing, the Court finds and concludes that Young's failure to make entries in Plaintiff's acquisition and disposition log for the acquisition of the Colt .45 and the sale of the same constitutes a willful violation of the Act when Young's experience and familiarity with the requirements of the Act and regulations are considered . . . .  Therefore, the Regional Director's decision concerning this violation is correct.

463 F. Supp. at 25.  In Athens Pawn Shop, Inc. v. Bennett, the plaintiff sought judicial review of the ATF's revocation of its firearms-dealer license for willfully violating the record-keeping requirements, and the district court granted summary judgment to the ATF.  See 2010 U.S. App. LEXIS 2005, at *2.  On appeal, the plaintiff did not dispute the violations but argued that revocation was not warranted because the violations were not willful, and were the result of inadvertent and technical record-keeping mistakes.  See id.  The United States Court of Appeals for the Fifth Circuit affirmed, finding that the district court correctly granted summary judgment.  The Fifth Circuit reasoned:

> Here, the evidence showed that Athens Pawn Shop had been cited on at least three prior occasions for the same or similar violations of the requirements for maintaining accurate acquisition and disposition records.  It was also specifically warned that its license was contingent on compliance with federal regulations and that future violations would be considered willful and could jeopardize its license.  It is indisputable that Athens Pawn Shop was aware of its legal obligations but committed numerous subsequent infractions.  Repeated violation of known legal requirements is sufficient to establish willfulness.

2010 U.S. App. LEXIS 2005, at *3 (citations omitted).

In Armalite, Inc. v. Lambert, which Borchardt Rifle has urged the Court to look to for the definition of willfulness, the plaintiff appealed the district court's grant of summary judgment to the ATF, arguing that the district court incorrectly applied the Gun Control Act's willfulness

requirement.  See 544 F.3d at 647.  During the plaintiff's 2004 compliance inspection, the plaintiff was issued a Report of Violations and given instructions for corrective action.  The ATF agents discussed the violations with the plaintiff and told it to take steps to ensure future compliance. When the ATF conducted a follow-up inspection in 2005, it found both new and repeat violations in the Forms 4473.  The plaintiff admitted that there were omissions on many of his Forms 4473, but that they were mere processing errors.  The Sixth Circuit disagreed, and affirmed the district court, stating: "[T]hose omissions amounted to reckless violations of known legal obligations or what comes to the same thing: a plain indifference to known legal obligations."  544 F.3d at 649.

In the case before the Court, it is undisputed that, following the ATF's 2002 compliance inspection of Story's store, which he would later incorporate into Borchardt Rifle, the ATF alerted Story of his violations, which included errors in five of the fifteen Forms 4473 that Story had on file. Story's violations included: (i) two Forms 4473 containing incorrect or duplicate transaction serial numbers; (ii) two Forms 4473 missing Story's signature and dates; (iii) one Form 4473 lacking the firearm description information; and (iv) one Form 4473 missing a customer's signature. See Administrative Record GX-10, ¶¶ 8, 10 at 30.  The ATF inspector, Chapa, informed Story that five forms with errors out of fifteen forms was a high rate of error.  See Administrative Record GX-10, ¶ 8 at 30.  Chapa noted in his inspection report that "Mr. Story appeared to want to do things right and was willing to correct his errors and welcomed the inspector to return for a follow-up inspection."  Administrative Record GX-10, ¶ 12 at 30.  Story was also given a copy of the written Report of Violations, which set forth the errors he had made and the requisite corrective actions necessary for compliance.  See Administrative Record GX-12 at 32.  In 2007, the ATF's compliance inspection of Borchardt Rifle, ran solely by Story, revealed errors and omissions on forty-two of the fifty-two Forms 4473 on file.  See Admin. Hearing Tr. at 43:7-12 (DeLuna); Administrative Record

GX-13 at 40; GX-15 at 52-53.  The 2007 violations included many repeat violations from the 2002 inspection: (i) twelve instances of duplicate, triplicate, and non-sequential serial numbers on the Forms 4473 (Count V of the Petition), see Admin. Hearing Tr. at 35:23-39:25 (DeLuna, Karmgard); id. at 40:5-41:6; id. at Administrative Record GX-17 at 60; GX-17A at 72; GX-26 at 100 and GX-27 at 103; GX-40 at 153 and GX-41 at 133; GX-49 at 157 and GX-50 at 161; GX-58 at 187 and GX-59 at 190; GX-38 at 126, GX-39 at 128, GX-41 at 133; GX-42 at 137, GX-43 at 139 and GX-44 at 142; GX-23 at 92; GX-24 at 94; GX-64 at 210; and GX-65 at 213; (ii) five Forms 4473 which did not contain complete and correct firearm identification information (Count IX), see Admin. Hearing Tr. at 53:19-54:20 (Karmgard, DeLuna); Administrative Record GX-25 at 99; GX-37 at 123; GX-47 at 152; GX-51 at 165; and (iii) twelve Forms 4473 which did not contain Borchardt Rifle's signature and transfer date (Count X), see Admin. Hearing Tr. at 55:3-57:10 (Karmgard, DeLuna); Administrative Record GX-30 at 109; GX-37 at 124; GX-38 at 127; GX-39 at 129; GX-40 at 131; GX-45 at 146; GX-51 at 166; GX-52 at 169; GX-56 at 182; GX-60 at 196; GX-61 at 200; GX-65 at 213.

The undisputed evidence, including Story's testimony at the Administrative Hearing, conclusively establishes that Borchardt Rifle was aware of the regulations imposed on it and yet, despite that knowledge, Borchardt Rifle continued to violate those same regulations.  Because Borchardt Rifle repeatedly violated the requirements of the Gun Control Act with knowledge of the law's requirements, had previously received instructions from the ATF on how to comply with those requirements, and acknowledged that more attention to paperwork was necessary and important, the Court finds that Borchardt Rifle's 2007 violations demonstrate plain indifference to its legal obligations.  The Court, therefore, holds that Borchardt Rifle's plain indifference toward its known legal obligations satisfies the willfulness requirement in 18 U.S.C. § 923.

**III.     THE COURT NEED NOT REACH THE ISSUE WHETHER 27 C.F.R. § 478.21(a) IS VOID AS THE ISSUE IS MOOT.**

Both Cook and Borchardt Rifle concede that, if the Court finds that Borchardt Rifle willfully violated the Gun Control Act on any Count in the petition besides Count XII, which alleges Borchardt Rifle violated 27 C.F.R. § 478.21, Borchardt Rifle's argument challenging the validity of the regulation is moot.  See Reply at 5; Tr. at 25:18-22 (Gardiner).  Because a single violation of the Gun Control Act is a sufficient basis for Cook to revoke Borchardt Rifle's license, the Court "need not scour each charge in the ATF's revocation notice."  Armalite, Inc. v. Lambert, 544 F.3d at 649 (citing Appalachian Res. Dev. Corp. v. McCabe, 387 F.3d at 464).  The Court has found that Borchardt Rifle willfully violated the Gun Control Act through the errors and omissions cited in Counts V, IX, and X of the Petition for Judicial Review. Because granting summary judgment in Cook's favor is appropriate if Borchardt Rifle violated only one of these Counts, the Court does not reach the question whether 27 C.F.R. § 478.21 is void.[11]

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 is granted and Cook's decision to revoke Borchardt Rifle's federal firearms license is affirmed.

---

[11] The Court notes, however, the finding of the United States District Court for the Northern District of Ohio in Armalite, Inc. v. Lambert, 512 F. Supp. 2d 1070 (N.D. Ohio 2007), aff'd, 544 F.3d 644 (6th Cir. 2008), which addressed an identical challenge to the validity of 27 C.F.R. § 478.21, and stated:

> The undersigned finds that a direct relationship exists between the required information for Form 4473 and the agency's ability to confirm the legality of firearms transfers and to otherwise effectuate the purposes of the GCA "to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background or incompetency." Huddleston v. United States, 415 U.S. 814 (1974).

512 F. Supp. 2d at 1081.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

John James D'Amato, Jr
Albuquerque, New Mexico

-- and --

Richard E. Gardiner
Fairfax, Virginia

      *Attorneys for the Plaintiff*


Gregory J. Fouratt
  United States Attorney
Jan Elizabeth Mitchell
  Assistant United States Attorney
United States Attorneys Office
Albuquerque, New Mexico

      *Attorneys for the Defendant*