**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BORCHARDT RIFLE CORP.,

       Plaintiff,

vs.                                        No. CIV 08-1188 JB/WDS

NANCY F. COOK,
Director of Industry Operations,
Bureau of Alcohol, Tobacco,
Firearms and Explosives,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Petitioner's Motion to Alter or Amend the Judgment, filed March 26, 2010 (Doc. 28)("Motion"). The Court held a hearing on February 9, 2011. The primary issues are: (i) whether Plaintiff Borchardt Rifle Corp.'s motion under rule 59(e) of the Federal Rules of Civil Procedure is appropriate; and (ii) whether the record contained sufficient evidence for the Court to find that Borchardt Rifle willfully violated 18 U.S.C. § 923. The Court will deny Borchardt Rifle's Motion, because the Motion is not appropriate, as it seeks to revisit issues that the Court has previously addressed. Even if Borchardt Rifle's Motion was appropriate, the Court would deny its Motion, because it finds that the evidence in the record was sufficient for the Court to find that Borchardt Rifle was plainly indifferent to its legal obligations and thus willfully violated 18 U.S.C. § 923.

## FACTUAL BACKGROUND

Borchardt Rifle is a firearms manufacturer and retailer, which manufactures, acquires, and sells firearms; Albert Story is Borchardt Rifle's president. See Petition for Judicial Review ¶ 4, at

1-2, filed December 23, 2008 (Doc. 1)("Petition"); Defendant Nancy F. Cook's, Director of Industry

Operations, Bureau of Alcohol, Tobacco, Firearms and Explosives, Answer to Plaintiff's Complaint

for Petition for Judicial Review (Doc. No. 1) ¶ 4, at 1, filed March 20, 2009 (Doc. 4)("Answer").

Following a 2002 compliance inspection, a Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF") investigator cited Story for violations in five of the fifteen Forms 4473[1] Story had on file,

and sent Story a written report of violations.  See Memorandum Opinion and Order at 4, filed

February 27, 2010 (Doc. 26)("MOO")(citing Administrative Record GX-11 at 31; Administrative

Record GX-10 ¶¶ 8, 10, at 30; Administrative Record GX-12 at 32).  In 2007, another ATF

investigator conducted a second compliance inspection of Borchardt Rifle's premises, and found

errors and/or omissions on forty-three of the fifty-two Forms 4473 on file for the period of January

2004 to August 2007.  See MOO at 4-6 (citations omitted).

On April 29, 2008, Borchardt Rifle received a Notice of Revocation of License, which

notified it of the revocation of its federal firearms license.  See Petition ¶ 6, at 2; Answer ¶ 6, at 2.

Borchardt Rifle requested a hearing pursuant to 18 U.S.C. § 923(f)(2); the hearing was held on

September 16, 2008.  See Petition ¶¶ 7-8 at 2; Answer ¶¶ 7-8, at 2.  Borchardt Rifle received a Final

Notice of Denial of Application or Revocation of Firearms License on October 29, 2008.

---

[1] An ATF Form 4473 is a firearms transaction record which must be completed for all sales of a firearm by a federal-firearms-licensee to a non-licensee, except in certain limited circumstances. The purpose of the Form 4473 is to "record identifying information about gun purchasers and the firearms they purchase, which allows firearms to be traced and prevents transfer to persons prohibited from possessing firearms." Article II Gun Shop v. Gonzales, 441 F.3d 492, 494 (7th Cir. 2006), cert. denied, 549 U.S. 995 (2006). The Form 4473 must include certain specified information concerning: (i) the transferee; (ii) the identification that the transferee provided; (iii) the National Instant Criminal Background Check System background check; (iv) the firearm transferred; and (v) the transferor.  See 27 C.F.R. § 478.124.  The Form must also contain the transferee's certification signature and the date of certification, the transferee's re-certification and date of re-certification, when appropriate, the transferor's signature, and the date that the transfer was completed.  See 27 C.F.R. § 478.124.

See Petition ¶ 9, at 2; Answer ¶ 9, at 2.

## PROCEDURAL BACKGROUND

On December 23, 2008, Borchardt Rifle filed its Petition to seek judicial review of the revocation of its license.  See Doc. 1.  Specifically, Borchardt Rifle sought "*de novo* judicial review of the revocation of a license as a manufacturer of firearms other than destructive devices."  Petition ¶ 1, at 1.  In its Petition, Borchardt Rifle argued that it did not willfully violate 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.102, because it did not intentionally, knowingly, or recklessly violate the requirements that those statutes and regulations prescribe.  See Petition ¶¶ 13, 20, 25, 29, 32, 35, 38, 47, 50, 53, 59, 69, at 2-11.  Borchardt Rifle asked the Court to decide that the Defendant erred and was not authorized to revoke its license, to order the Defendant to withdraw the revocation, and to award costs and attorney's fees.  See Petition at 11.

On October 27, 2009, the Defendant filed Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56.  See Doc. 13.  The Defendant argued that the undisputed facts demonstrated that Borchardt Rifle willfully violated federal firearms regulations and thus the Court should uphold the revocation of Borchardt Rifle's firearms license.  See Defendant's Memorandum of Law in Support of Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 at 13, 19, filed October 27, 2009 (Doc. 14).

The Court issued a Memorandum Opinion and Order on February 27, 2010, granting the Defendant's motion for summary judgment and affirming the revocation of Borchardt Rifle's federal firearms license, because the undisputed facts demonstrated that Borchardt Rifle willfully violated 18 U.S.C. § 923.  See MOO at 1.  The Court found that it had sufficient evidence to decide the motion as a matter of law.  See MOO at 22.  The Court undertook an extensive review of the case law relating to the appropriate standard for revocation of a Federal firearms license by ATF.

See MOO at 24-27.  The Court adopted the standard that the Fifth Circuit set forth in Athens Pawn

Shop, Inc. v. Bennett, 364 F. App'x 58 (5th Cir. 2000).  See MOO at 27.  The Court found that it

was unnecessary to require the Defendant to present direct evidence that Story possessed a reckless

state of mind at the time he violated the Gun Control Act, "because the plain language of the Gun

Control Act and the case law addressing 18 U.S.C. § 932 do not support such a requirement."  MOO

at 31.  The Court next found that the undisputed facts provided sufficient circumstantial evidence

from which it could make a determination as a matter of law.  See MOO at 31.  The Court stated that

the "Administrative Record is replete with evidence of Story's state of mind at the time of the

violations."  MOO at 34.  Using the standard set forth in Athens Pawn Shop, Inc. v. Bennett, under

which the Defendant was required to show that Borchardt Rifle either "intentionally and knowingly

violated its obligations, or was recklessly or plainly indifferent despite . . . awareness of the law's

requirements" to prove a willful violation of the Gun Control Act, MOO at 37, the Court found that

the undisputed evidence showed a willful violation, see MOO at 41.  The Court stated that, "Story's

testimony at the Administrative Hearing, conclusively establishes that Borchardt Rifle was aware

of the regulations imposed on it and yet, despite that knowledge, Borchardt Rifle continued to

violate those same regulations."  MOO at 41.

> Because Borchardt Rifle repeatedly violated the requirements of the Gun Control Act
> with knowledge of the law's requirements, had previously received instructions from
> the ATF on how to comply with those requirements, and acknowledged that more
> attention to paperwork was necessary and important, the Court finds that Borchardt
> Rifle's 2007 violations demonstrate plain indifference to its legal obligations.  The
> Court, therefore, holds that Borchardt Rifle's plain indifference toward its known
> legal obligations satisfies the willfulness requirement in 18 U.S.C. § 923.

MOO at 41.  The basis for the Court's conclusion that repeat violations demonstrate plain

indifference was that, "[a]lthough knowledge alone does not constitute a willful violation of the Gun

Control Act, courts have consistently held that repeated violations of the Gun Control Act with

-4-

knowledge of the licensee's legal requirements and previous warnings by the ATF establishes plain indifference."   MOO at 37 (citation omitted).   In support of its statement of the law, the Court discussed or cited to <u>Armalite Inc. v. Lambert</u>, 544 F.3d 644 (6th Cir. 2008); <u>RSM, Inc. v. Herbert</u>, 466 F.3d 316 (4th Cir. 2006); <u>Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives</u>, 415 F.3d 1274 (11th Cir. 2005); <u>Athens Pawn Shop, Inc. v. Bennett</u>, 364 F. App'x 58; <u>Perri v. Department of the Treasury, Bureau of Alcohol, Tobacco, and Firearms</u>, 637 F.2d 1332 (9th Cir. 1981); <u>Stein's Inc. v. Blumenthal</u>, 649 F.2d 463 (7th Cir. 1980); <u>Lewin v. Blumenthal</u>, 590 F.2d 268 (8th Cir. 1979); and <u>Service Arms Co. v. United States Department of Treasury</u>, 76 F.R.D. 109 (W.D. Okla. 1977).   <u>See</u> MOO at 37-39.

On March 26, 2010, Borchardt Rifle filed its Motion to Alter or Amend the Judgment.   <u>See</u> Doc. 28.   Borchardt Rifle moves the Court, pursuant to rule 59(e) of the Federal Rules of Civil Procedure, to alter or to amend the judgment.   Borchardt Rifle contends that the Court misapprehended an aspect of the controlling law.   Borchardt Rife contends that a sole showing of repeated violations from years earlier does not show a culpable mental state in concurrence with the unlawful act.

On April 12, 2010, the Defendant filed the Respondent's Opposition to Petitioner's Motion to Alter or Amend the Judgment (Doc. 28).   <u>See</u> Doc. 29 ("Response").   The Defendant argues that Borchardt Rifle does not articulate a new argument, set forth new facts, or present the Court with new case law, and that, because the Court considered and rejected Borchardt Rifle's argument in its MOO, it is not appropriate to revisit Borchardt Rifle's argument pursuant to a rule 59(e) motion. The Defendant further argues that the law does not support Borchardt Rifle's argument that repeat violations do not demonstrate plain indifference.

Borchardt Rifle filed the Petitioner's Reply to Respondent's Opposition to Petitioner's

Motion to Alter or Amend the Judgment on April 16, 2010.  See Doc. 30 ("Reply").  In its Reply, Borchardt Rifle argues that its Motion sets forth a new argument -- that repeat violations themselves cannot evidence willfulness because there is no concurrence between the mens rea and actus reus.

At the hearing, Borchardt Rifle clarified its briefing by stating that the question before the Court is whether the record contains sufficient evidence for the Court to find recklessness. See Transcript of Hearing at 8:21-9:4 (taken February 9, 2011)(Court, Gardiner)("Tr.").[2]  Borchardt Rifle stated that it was in agreement with the standard from Athens Pawn Shop, Inc. v. Bennett that the Court used in its MOO and that its argument was based on the Court's application of established law to the facts of the case.  See Tr. at 8:12-9:4 (Court, Gardiner).  Borchardt Rifle argued that the only evidence in the record of recklessness is the repeat violations.  See Tr. at 9:7-12 (Court, Gardiner)("THE COURT: . . . [Y]ou're saying that the only evidence that the Court can find for recklessness is the past events, that there's no evidence of recklessness at the time . . . of the violations here.  MR. GARDINER: That's right.").

## LAW REGARDING RULE 59(e)

Rule 59(e) of the Federal Rules of Civil Procedures states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(d). "A motion under Rule 59(e) is warranted when: (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary to correct clear error or prevent manifest injustice."  Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  Servants of Paraclete

_____

[2] The Court's citations to the transcript refer to the court reporter's original, unedited version. The final transcript may contain slightly different page and/or line numbers.

v. Does, 204 F.3d at 1012 (citation omitted).  A district court has considerable discretion in ruling on a motion to reconsider.  See Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997).  A rule 59(e) motion is not an opportunity to rehash arguments previously addressed or to advance new arguments that could have been raised in prior briefing.  See Servants of the Paraclete v. Does, 204 F.3d at 1012 ("It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." (citation omitted)).

## ANALYSIS

The Court will deny Borchardt Rifle's motion, because the motion is not appropriate.  The motion seeks to revisit issues the Court previously addressed in its MOO.  Even if Borchardt Rifle's motion were appropriate, however, the Court would deny its motion, because it finds that the evidence in the record was sufficient for the Court to find that Borchardt Rifle was plainly indifferent to its legal obligations and thus willfully violated 18 U.S.C. § 923.

## I.      THE MOTION TO AMEND PURSUANT TO RULE 59(e) IS NOT APPROPRIATE.

Borchardt Rifle's motion to amend or to alter the Court's judgment is not appropriate, because, in its motion, Borchardt Rifle seeks to rehash arguments that the Court previously addressed.  Borchardt Rifle argues that the record did not contain sufficient evidence for the Court to find recklessness, because the evidence regarding prior violations is not sufficient to demonstrate Story's state of mind in 2007.  See Tr. at 8:21-9:4 (Court, Gardiner)("THE COURT: [S]o I'm wondering if . . . the question is whether . . . this record contains sufficient evidence for a Court to find recklessness.  Would you agree with that.  MR. GARDINER: Yes."); id. at 9:8-12 (Court, Gardiner)("THE COURT: [Y]ou're saying that the only evidence that the Court can find for recklessness is past events, that there's no evidence of recklessness at the time . . . of the violations here.  MR. GARDINER.  That's right.").  In its response to the Defendant's motion for summary

judgment, Borchardt Rifle raised the argument that repeated violations were not sufficient proof of

the licensee's state of mind at the time of the violation.

> [W]hile past violations which have been brought to the dealer's attention may be
> used to show knowledge of what the law requires, because recklessness requires
> focus on the licensee's state of mind at the time of the violation, there is no basis for
> concluding that past violations may be used to show that, with respect to a current
> violation, a dealer acted recklessly (or with plain indifference).  Rather, to show
> recklessness (or plain indifference), there must be proof of the actor's state of mind
> at the time of the violation at issue.

Petitioner's Opposition to Respondent's Motion for Summary Judgment at 6, filed December 9,

2009 (Doc. 16).  The Court carefully considered Borchardt Rifle's argument in its MOO.

> [The Defendant] argues that, in an ATF revocation hearing, willfulness means that
> the licensee knew of his legal obligation and purposefully disregarded or was plainly
> indifferent to the requirements.  See Reply at 4.  She argues that Borchardt Rifle's
> repeat violations alone are sufficient to show willfulness, but additionally, the
> violations in Counts V, IX, and X demonstrate an overall lack of attentiveness to the
> documentary   requirements   of   conducting   a   regulated   firearms   business
> -- specifically, that forty-three of the fifty-two Forms 4473 in Borchardt Rifle's files
> reviewed during the 2007 compliance inspection contained errors and/or omissions.
> See Reply at 5.  Borchardt Rifle contends that the evidence does not support a
> finding that it committed these errors and omissions willfully, because to be reckless
> or plainly indifferent, there must be proof of the actor's state of mind at the time of
> the violation at issue.  See Response at 6.

MOO at 36-37.  The Court reviewed the case law, recognizing that negligence is insufficient to show

willfulness, but that courts have "consistently held that repeated violations of the Gun Control Act

with knowledge of the licensee's legal requirements and previous warnings by the ATF establishes

plain indifference."  MOO at 37 (citations omitted).  Based on its review of the case law and the

evidence in the record, the Court found that Borchardt Rifle's 2007 violations demonstrated plain

indifference to its legal obligations, because Borchardt Rifle repeatedly violated the Gun Control

Act's requirements with knowledge of those requirements, had received instructions from ATF on

how to comply with the requirements, and had acknowledged that it was important and necessary

to pay more attention to the paperwork.  <u>See</u> MOO at 41.  Because Borchardt Rifle raises the same argument that it raised in its opposition to the Defendant's motion for summary judgment, the Court will deny its motion to amend or alter judgment under rule 59(e), as a rule 59(e) motion is not an opportunity to rehash arguments previously addressed.  <u>See</u> <u>Servants of Paraclete v. Does</u>, 204 F.3d at 1012 ("[A rule 59(e) motion] is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." (citation omitted)).

## II.    THE COURT CORRECTLY APPREHENDED AND APPLIED THE LAW IN ITS MOO.

Even if Borchardt Rifle's Motion raises issues that the Court did not address in its MOO, or that Borchardt Rifle could not have previously raised, the Court would deny its Motion.  Borchardt Rifle does not argue that there has been an intervening change in the law, or that it has discovered new evidence previously unavailable.  Although Borchardt Rifle's argument is not completely clear to the Court, as the arguments it raised at the hearing did not seem to be wholly in line with the arguments it raised in its motion, it appears that Borchardt Rifle is arguing clear error or manifest injustice because of the Court's misapprehension or misapplication of the controlling law.  In its motion, Borchardt Rifle argues that the Court misapprehended controlling law, but at the hearing, Borchardt Rifle stated that the Court set forth the correct standard, but did not correctly apply the standard to the facts in the case.  Under either argument, Borchardt Rifle has not stated sufficient grounds for the Court to grant its motion.  The Court's apprehension of the law was not in clear error and did not cause manifest injustice, because the Court's statement of the law is in line with, and follows, the controlling law.  The Court's application of the law also was not in clear error and did not create manifest injustice, because there are sufficient facts in the record to demonstrate that Borchardt Rifle acted with plain indifference to its legal obligations.

In its motion, Borchardt Rifle argues that the Court misapprehended the controlling law in holding that the existence of repeat violations establishes plain indifference, because, to show recklessness, there must be proof of the actor's state of mind at the time of the violation; acts committed years earlier are not probative.  The Defendant argues that the law supports the Court's finding that a licensee's repeated violations, after it is informed of the law's requirements, show plain indifference and thus a willful violation.

In its MOO, the Court recognized that negligence is insufficient to show willfulness.  <u>See</u> MOO at 37.  The Court stated that, "[a]lthough knowledge alone does not constitute a willful violation of the Gun Control Act, courts have consistently held that repeated violations of the Gun Control Act with knowledge of the licensee's legal requirements and previous warnings by the ATF establishes plain indifference," and that plain indifference satisfies the willfulness requirement. MOO at 37-38 (citations omitted).  The Court then discussed in detail <u>Armalite, Inc. v. Lambert</u>, 544 F.3d 644, <u>Athens Pawn Shop, Inc. v. Bennet</u>, 364 F. App'x 58, and <u>Service Arms Co., Inc. v. United States</u>, 463 F. Supp. 21, in which the courts addressed repeated violations.  <u>See</u> MOO at 38-40. Borchardt Rifle argues that the Court, in its MOO, cited only two cases that post-dated the Supreme Court of the United States' decision in <u>Safeco Insurance of America v. Burr</u>, 551 U.S. 47 (2007), in which the Supreme Court discussed the term willful in the context of the Fair Credit Report Act ("FRCA"), and that, to the extent that the cases before <u>Safeco Insurance of America v. Burr</u> held that repeated violations establishes plain indifference, they were wrongly decided.

In <u>Safeco Insurance Co. of America v. Burr</u>, the Supreme Court addressed whether the term "willful failure" in the FCRA "covers a violation committed in reckless disregard of the notice obligation" and whether the petitioners committed reckless violations. 551 U.S. at 52. The Supreme Court stated that willfully is a "word of many meanings whose construction is often dependent on

the context in which it appears," and that, where "willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well."  551 U.S. at 57 (citations omitted).  The Supreme Court determined that

> a company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

551 U.S. at 69.

Several courts have discussed whether Safeco Insurance Co. of America v. Burr has impacted the standards that courts have set forth for determining when a licensee willfully violates the Gun Control Act.  In Armalite v. Lambert, the United States Court of Appeals for Sixth Circuit resolved the ambiguity that one of its previous decisions created by clarifying that a licensee willfully violates the Gun Control Act "by intentionally, knowingly or recklessly violating known legal obligations," and stated that this definition was consistent with Safeco Insurance Co. of America v. Burr.  544 F.3d at 648-49.  In General Store, Inc. v. Van Loan, 560 F.3d 920 (9th Cir. 2009), the United States Court of Appeals for the Ninth Circuit stated that it had defined willfully as "when a dealer understands the requirements of the law, but knowingly fails to follow them" or shows plain indifference to them, and that "[t]here is no distinction of consequence between the definitions of 'willfully' in [its precedent] and Safeco."  560 F.3d at 923-24.  In American Arms International v. Herbert, 563 F.3d 78 (4th Cir. 2009), the United States Court of Appeals for the Fourth Circuit stated:

> The facts and outcomes of Prino[v. Simon, 606 F.2d 499 (4th Cir. 1979),] and RSM[, Inc. v. Herbert, 466 F.3d 316 (4th Cir. 2006),] are almost identical.  Both cases stand for the proposition that, where a licensee receives official warning that his actions violate the GCA and his record of compliance does not change (or, in these cases, gets worse), it is permissible to infer "willfulness."

. . . .

   The decision in <u>RSM</u> also does not conflict with the Supreme Court's decision in <u>Safeco</u> in any way that would have significance for this case.  In <u>Safeco</u>, the Supreme Court considered the meaning of the "willfulness" requirement in the Fair Credit Reporting Act's ("FCRA") provision creating a private right of action for consumers.  Petitioner insurance companies tried to argue that "willfulness" in this context applied only to knowing violations of the FCRA, and not to "reckless disregard" of statutory obligations, but the Court disagreed.  The Court noted that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well."  This decision is completely in accord with our decisions in <u>Prino</u> and <u>RSM</u>.

563 F.3d at 85.  The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, in addressing the effect of the Supreme Court's decision, stated that she was not convinced that the Supreme Court intended for courts to use its interpretation of "willfully" in <u>Safeco Insurance Co. of America v. Burr</u> in the context of the Gun Control Act, and that "[t]he <u>Safeco</u> Court was specifically evaluating the term as it should be applied and defined in accordance with the [FCRA] . . . .  [Other] cases have specifically dealt with the term 'willfully' as it was used and defined by the GCA, that reading must be applied to the instant case."  <u>Lumber Jack Bldg. Ctrs. v. Alexander</u>, 536 F. Supp. 2d 804, 808 (E.D. Mich. 2008).[3]

   The Court does not believe that it misapprehended the controlling law.  The standard that it

---

   [3] The Court is not convinced that it is free not to follow the Supreme Court's interpretation of the word "wilfully" in <u>Safeco Insurance Co. of America v. Burr</u>, particularly given that the Tenth Circuit has not interpreted that word "wilfully" in the Gun Control Act.  On the other hand, in the criminal context, the Tenth Circuit Pattern Jury Instructions do "not recommend any general instruction defining the term 'willfully' because no single instruction can accurately encompass the different meanings this term has in federal criminal law."  Tenth Circuit Criminal Pattern Jury Instruction 1.38, at 62 (2005 ed.)(Willfully -- To Act).  "This term is a word of many meanings, its construction often being influenced by its context."  Tenth Circuit Criminal Pattern Jury Instruction 1.38, at 62 (internal quotation marks and citations omitted).  In any case, the Court is also not convinced that there is any material difference between the wording of the definition of "willfulness" in <u>Safeco Insurance Co. of America v. Burr</u>, and in <u>Athens Pawn Shop, Inc. v. Bennett</u> and similar cases.

-12-

applied to determine whether Borchardt Rifle willfully violated 18 U.S.C. § 923 did not authorize revocation of a licensee's license on the basis of mere carelessness; instead, the standard that the Court used required intentional and knowing violation of the dealer's obligations, or reckless or plain indifference despite the dealer's awareness of the law's requirements.  The Court recognized that negligence was insufficient to show willfulness.  As the courts in American Arms International v. Herbert, Armalite v. Lambert, and General Store, Inc. v. Van Loan found, this standard is consistent with the Supreme Court's discussion of willfully in Safeco Insurance Co. of America v. Burr.  See Safeco Ins. Co. of Am. v. Burr, 551 U.S. at 57 (stating that "willfulness is a statutory condition of civil liability[;] we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well" (citations omitted)).

Several courts have, following Safeco Insurance Co. of America v. Burr, found that the Supreme Court's decision did not conflict with the proposition that repeated violations of the Gun Control Act with knowledge of the law's legal requirements and previous warnings by the ATF establish plain indifference.  See Am. Arms Int'l v. Herbert, 563 F.3d at 85; Gen. Store, Inc. v. Van Loan, 560 F.3d 923-25 (finding that there was no distinction of consequence between the definitions of willfully in its precedent and in Safeco Insurance Co. of America v. Burr, and that a licensee willfully violated the Gun Control Act, because the licensee received citations for violations in a previous inspection in 2001, there was some evidence that the licensee attempted to meet its obligations by beginning to use a firearms repair log after the 2001 inspection, and the initial use of the log was "followed by two years of inaccurate or incomplete records leading up to the 2003 inspection, [which] demonstrate[d] [the licensee's] indifference to its legal obligation"); Armalite v. Lambert, 544 F.3d at 648-50 (finding that its definition of willfully was consistent with Safeco Insurance Co. of America v. Burr and that a licensee willfully violated the Gun Control Act, based

-13-

on evidence of its "consistent failure to ensure full and accurate completion of [the] forms[,] [even though] it knew that its employees were not fully and accurately completing the forms" as a result of a prior compliance inspection which revealed a number of errors).  As the Fourth Circuit recognized in American Arms International v. Herbert, willfulness does not extend to inadvertent errors, but at some point, "a repeated failure to comply with known regulations can move a licensee's conduct from inadvertent neglect into reckless or deliberate disregard (and thus willfulness)," as in the situation where the "number and seriousness [of violations] . . . in the face of repeated warnings undoubtedly satisf[ied] the willfulness requirement."   563 F.3d at 85 (alterations in original)(citations omitted).  The Court believes that its conclusion that repeated violations may result in plain indifference, and thus satisfy the willfulness requirement, is consistent with the Supreme Court's statement in Safeco Insurance Co. of America v. Burr that "a company does not act in reckless disregard of FCRA unless the action is not only a violation under a reasonable reading of the statute, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  551 U.S. at 66.  As the Fourth Circuit has recognized, at some point, repeated violations rise above carelessness, neglect, or negligence into the realm of reckless conduct.  Because the Court believes that its conclusion that repeated violations may demonstrate plain indifference is consistent with the Supreme Court precedent and existing case law, the Court does not believe that it has misapprehended controlling law.

Borchardt Rifle argues that, because a license revocation proceeding is a quasi-criminal proceeding, one of the fundamental notions of criminal law applies -- that there must be concurrence of the actus reus, or unlawful act, and the mens rea, or culpable mental state.  The Court has not found, and Borchardt Rifle has not directed the Court's attention to, any case law which supports

-14-

Borchardt Rifle's assertion that the criminal law requirement of concurrence should apply in an ATF administrative proceeding or in the judicial review of the revocation of a firearms license; nevertheless, the Court believes that Borchardt Rifle is correct.  As the Court previously addressed in its MOO, the Defendant is not required to present direct evidence that Story possessed a reckless state of mind at the time he violated the Gun Control Act.  See MOO at 29-31.[4]  Borchardt Rifle concedes that the evidence of Story's state of mind need not be direct, but may be circumstantial. See Reply at 3 ("Borchardt [Rifle] does not disagree that evidence of the licensee's state of mind need not be direct, but may be circumstantial.").  At the hearing, Mr. Gardiner admitted that evidence of violations of the law is some evidence of state of mind.  See Tr. at 5:23-24 (conceding that evidence of a violation of the law is "some evidence of the state of mind").  The heart of Borchardt Rifle's argument is therefore whether the record contains sufficient evidence for the Court to find a reckless state of mind.  See Tr. at 8:19-9:4 (Court, Gardiner)("MR. GARDINER: . . . [I]n our view [recklessness] requires state of mind at the time of the act.  THE COURT: . . . I don't think the United States [or the Court] will disagree with that."); id. at 8:23-9:4 ("THE COURT: . . . [S]o if we're in agreement [that the mens rea has to occur with the act] . . . the question is whether . . .

---

[4] As the Tenth Circuit Criminal Pattern Jury Instruction on Evidence -- Direct and Circumstantial -- Inferences states:

> [There are, generally speaking, two types of evidence from which a jury may properly determine the facts of the case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.]
> [As a general rule, the law makes no distinction between direct and circumstantial evidence.  The law simply requires that you find the facts in accord with all the evidence in the case . . . .]

Tenth Circuit Criminal Pattern Jury Instruction 1.07, at 15.

-15-

this record contains sufficient evidence for a Court to find recklessness.  Would you agree with that.

MR. GARDINER: Yes.").

In its MOO, the Court found that the administrative record was replete with evidence of

Story's state of mind at the time of his actions which gave rise to his violations of the Gun Control

Act.

> The Firearms Inspection Report from Chapa's 2002 inspection includes Story's
> response to the violations for which he was cited: "Licensee stated that they were
> oversights.  Licensee stated that he could not account for the oversights and that he
> would start to review the forms more closely prior to the customer leaving and that
> he would also review the forms weekly."  Administrative Record GX-13 at 44.  The
> Report of Violations from DeLuna's 2007 inspection also details the responses that
> Story gave to her regarding his cited violations.  See Administrative Record GX-17
> at 56 ("Licensee stated that they were oversights.  Licensee stated that he could not
> account for the oversights and that he would start to review the forms more closely
> prior to the customer leaving and that he would also review the forms weekly.");
> GX-17 at 59 ("Licensee stated that he transferred a firearm and forgot to record the
> information in the A&D book as a disposition."); GX-17 at 60 ("Licensee stated that
> he could not account for the oversight.  Licensee stated that he would attempt to look
> at the A&D book and the form to make sure that the numbers matched and that no
> two forms were assigned the same number.").  Story also submitted responses to the
> 2007 violations.  See Administrative Record GX-17A at 67 ("I realize most of these
> errors are oversights and my attention to paper work & book keeping has sometimes
> been lax and inadequate.  I have begun a new procedure for paperwork that includes
> a time with no distractions . . . .").  At the Administrative Hearing, Story was also
> permitted to speak at length about his cited violations.  He explained that DeLuna's
> inspection got his attention, see Admin. Hearing Tr. at 65:19-21 (Story), and stated:
> "I'll be the first one to admit, my paperwork is very sloppy . . . .  I don't think I've
> shown in here where I'd done anything purposely illegal.  It's just carelessness in my
> paperwork."  Admin. Hearing Tr. at 66:8-17 (Story).  Story also stated: "I know this
> is serious, but I was not intentionally breaking the law."  Admin. Hearing Tr. at
> 73:16-18.  He explained: "I'm approaching 70 years old, and I forget a lot of stuff,
> you know, like all of us do."  Admin. Hearing Tr. at 67:20-22 (Story).  He also
> explained:
>
>> Well, living in a rural area, you get to know a lot of people and you
>> become friends with people.  You know, you get to talking to them,
>> and I believe that's where a lot of my mistakes occurred, right then
>> and there.  You know, just get to talking with them and kind of forget
>> about the paperwork that's very important.

Admin. Hearing Tr. at 71:10-16 (Story). The Hearing Officer indicated to Story that ninety percent of his Forms 4473 had errors and omissions, and Story explained that he did not finish high school and that his paperwork "really lacks, big time lacks." Admin. Hearing Tr. at 75:18-76:4 (Hearing Officer, Story). Borchardt Rifle has not disputed any of this evidence, or the statements that Story made at the hearing. It has not submitted any affidavits or additional evidence which refutes any evidence in the Administrative Record or in the Administrative Hearing. Borchardt Rifle has also not stated that, at any trial, it would or could submit any additional evidence that would be inconsistent with what the record already contains.

The Court believes that this volume of undisputed evidence gives a clear and thorough picture of Story's state of mind, and likely a more accurate depiction of his state of mind -- as the explanations Story gave for the 2002 and 2007 inspection reports were taken much closer in time to the alleged incidents -- than testimony the Court could hear at an evidentiary hearing or trial.

MOO at 34-36. After analyzing case law regarding recklessness and plain indifference, the Court found that courts have consistently held that repeated violations of the Gun Control Act, with knowledge of the licensee's legal requirements and with previous ATF warnings, establish plain indifference. See MOO at 37-40. The Court stated:

In [this case], it is undisputed that, following the ATF's 2002 compliance inspection of Story's store, which he would later incorporate into Borchardt Rifle, the ATF alerted Story of his violations, which included errors in five of the fifteen Forms 4473 that Story had on file. Story's violations included: (i) two Forms 4473 containing incorrect or duplicate transaction serial numbers; (ii) two Forms 4473 missing Story's signature and dates; (iii) one Form 4473 lacking the firearm description information; and (iv) one Form 4473 missing a customer's signature. See Administrative Record GX-10, ¶¶ 8, 10 at 30. The ATF inspector, [Arturo] Chapa, informed Story that five forms with errors out of fifteen forms was a high rate of error. See Administrative Record GX-10, ¶ 8 at 30. Chapa noted in his inspection report that "Mr. Story appeared to want to do things right and was willing to correct his errors and welcomed the inspector to return for a follow-up inspection." Administrative Record GX-10, ¶ 12 at 30. Story was also given a copy of the written Report of Violations, which set forth the errors he had made and the requisite corrective actions necessary for compliance. See Administrative Record GX-12 at 32. In 2007, the ATF's compliance inspection of Borchardt Rifle, ran solely by Story, revealed errors and omissions on forty-two of the fifty-two Forms 4473 on file. See Admin. Hearing Tr. at 43:7-12 (DeLuna); Administrative Record GX-13 at 40; GX-15 at 52-53. The 2007 violations included many repeat violations from the 2002 inspection: (i) twelve instances of duplicate, triplicate, and non-sequential serial numbers on the Forms 4473 (Count V of the Petition), see Admin. Hearing Tr.

at 35:23-39:25 (DeLuna, Karmgard); <u>id.</u> at 40:5-41:6; <u>id.</u> at Administrative Record GX-17 at 60; GX-17A at 72; GX-26 at 100 and GX-27 at 103; GX-40 at 153 and GX-41 at 133; GX-49 at 157 and GX-50 at 161; GX-58 at 187 and GX-59 at 190; GX-38 at 126, GX-39 at 128, GX-41 at 133; GX-42 at 137, GX-43 at 139 and GX-44 at 142; GX-23 at 92; GX-24 at 94; GX-64 at 210; and GX-65 at 213; (ii) five Forms 4473 which did not contain complete and correct firearm identification information (Count IX), <u>see</u> Admin. Hearing Tr. at 53:19-54:20 (Karmgard, DeLuna); Administrative Record GX-25 at 99; GX-37 at 123; GX-47 at 152; GX-51 at 165; and (iii) twelve Forms 4473 which did not contain Borchardt Rifle's signature and transfer date (Count X), <u>see</u> Admin. Hearing Tr. at 55:3-57:10 (Karmgard, DeLuna); Administrative Record GX-30 at 109; GX-37 at 124; GX-38 at 127; GX-39 at 129; GX-40 at 131; GX-45 at 146; GX-51 at 166; GX-52 at 169; GX-56 at 182; GX-60 at 196; GX-61 at 200; GX-65 at 213.

       The undisputed evidence, including Story's testimony at the Administrative Hearing, conclusively establishes that Borchardt Rifle was aware of the regulations imposed on it and yet, despite that knowledge, Borchardt Rifle continued to violate those same regulations.   Because Borchardt Rifle repeatedly violated the requirements of the Gun Control Act with knowledge of the law's requirements, had previously received instructions from the ATF on how to comply with those requirements, and acknowledged that more attention to paperwork was necessary and important, the Court finds that Borchardt Rifle's 2007 violations demonstrate plain indifference to its legal obligations.   The Court, therefore, holds that Borchardt Rifle's plain indifference toward its known legal obligations satisfies the willfulness requirement in 18 U.S.C. § 923.

MOO at 40-41.  Thus, there is more than evidence of prior violations; there is also evidence of warnings and admissions of inadequate record keeping.

The Court believes it correctly applied the law to the evidence in the record before it in finding that the record contained sufficient evidence to demonstrate recklessness.  As the Court recognized in its MOO, courts have consistently found that evidence of previous violations, the licensee's knowledge of the law's requirements, and continued violations after the ATF's discovery of previous violations demonstrates, plain indifference or recklessness.  See Garner v. Lambert, 345 F. App'x 66, 72-73 (6th Cir. 2009)(finding that the petitioner was plainly indifferent to his obligations, and thus his violations were willful, when the petitioner was cited for a "long string of violations," and each time the ATF cited him, "it attempted to impress the importance of full

compliance," but "[e]ven after the ATF warned him . . . that he could lose his license if more violations were found, his violations persisted"); Gen. Store, Inc. v. Van Loan, 560 F.3d at 924-25 (finding that the licensee willfully violated the Gun Control Act, because, after receiving citations for violations following inspections and instructions and demonstrating some effort to meet its obligations under the law, it continued to maintain inaccurate or incomplete records); Armalite, Inc. v. Lambert, 644 F.3d at 649-50; MOO at 37-40.  In Armalite, Inc. v. Lambert, the ATF found several deficiencies during the petitioner's 2004 compliance inspection, mailed the petitioner's president a report of the violations, and explained the law's requirements to the president.  See 544 F.3d at 645.  Another inspection, in 2005, revealed more violations -- some of which were similar -- and in view of these findings, the ATF gave the petitioner notice of its intent to revoke the petitioner's license.  See 544 F.3d at 645.  At the revocation hearing, the petitioner challenged ATF's conclusion that it acted willfully, attributing many of the mistakes to human or processing errors.  See 644 F.3d 645-46.  The petitioner sought judicial review of the ATF's decision, and when the district court granted the government's motion for summary judgment, the petitioner appealed, arguing that the district court incorrectly applied the Gun Control Act's willfulness requirement. See 544 F.3d at 646-47.  The Sixth Circuit affirmed the district court's grant of summary judgment, noting that the petitioner had acknowledged its understanding of the law's obligations, that the 2004 inspection revealed violations, that the ATF issued a report of violations which included instructions for corrective action, that the ATF agents discussed the violations with the petitioner, that the ATF told the petitioner to take steps to ensure future compliance, and that the 2005 inspection revealed errors, both new and old.  See 644 F.3d at 650.

> The essence of [the petitioner's] plain indifference to the legal requirements . . . lies in its consistent failure to ensure full and accurate completion of [the] forms. Although it knew that its employees were not fully and accurately completing the

forms, [the petitioner] chose not to take steps to ensure future compliance.  At some point repeated negligence becomes recklessness, and that point arrived for [the petitioner] in 2005.

544 F.3d at 649-50.   As in Armalite, Inc. v. Lambert, where the evidence demonstrated the petitioner's plain indifference when the petitioner received a report of violations after several violations were found in an inspection, the petitioner acknowledged its understanding of the law's obligations, ATF agents discussed the violations with the petitioner, and a later inspection revealed further violations, both old and new, in this case, following an inspection in 2002, the ATF alerted Story of his violations and gave him a written report of violations, setting forth the errors he made and requisite corrective actions, Story stated that the errors were oversights and that he would review the forms more closely, and an inspection in 2007 revealed errors and omissions, including may repeat violations from the 2002 inspection.  The Court therefore believes that the evidence in the record sufficiently demonstrates Borchardt Rifle's plain indifference.  See Garner v. Lambert, 345 F. App'x 66, 72-73; Gen. Store, Inc. v. Van Loan, 560 F.3d at 924-25; Armalite, Inc. v. Lambert, 644 F.3d at 649-50.  Because the Court finds that it neither misapprehended nor incorrectly applied the law in its MOO, it will not alter or amend its judgment, and will leave in place its grant of the Defendant's motion for summary judgment.

IT IS ORDERED that the Petitioner's Motion to Alter or Amend the Judgment, filed March 26, 2010 (Doc. 28), is denied.

_____
UNITED STATES DISTRICT JUDGE

-20-

*Counsel:*

John James D'Amato
Albuquerque, New Mexico

-- and --

Richard E. Gardiner
Fairfax, Virginia

  *Attorneys for the Plaintiff*

Kenneth J. Gonzales
 United States Attorney
Jan Elizabeth Mitchell
Michael Hoses
 Assistant United States Attorneys
Albuquerque, New Mexico

  *Attorneys for the Defendant*